**American Trucking Associations, Inc., Chemical Leaman Tank Line, Inc. and Anderson Trucking Service, Individually and on Behalf of All Others Similarly Situated v. William Conway, Commissioner of Motor Vehicles; Paul Philbrook, Vermont Commissioner of Public Safety; Richard Snelling, Governor of State of Vermont and Thomas Evslin, Secretary of Vermont Agency of Transportation**

[508 A.2d 408]

No. 83-484

Present: Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed February 21, 1986

*Ralph A. Foote, Robert H. Moyer* and *Charles Starbuck* of *Conley and Foote,* Middlebury, for Plaintiffs-Appellees.

*John J. Easton, Jr.,* Attorney General, and *Zander B. Rubin* and *Robert C. Schwartz,* Assistant Attorneys General, Montpelier, for Defendants-Appellants.

**Peck, J.** The defendants appeal an order of the Washington Superior Court declaring unconstitutional statutes imposing fuel user license fees, 23 V.S.A. §§ 415, 3007, and trip permit fees or temporary authorization fees, 23 V.S.A. § 3010, on foreign-registered trucks. The lower court found that these statutes, challenged by plaintiffs in a class action,[1] violated the Commerce Clause of the United States Constitution by discriminating against interstate commerce. The court held the statutes unconstitutional because under the statutory scheme foreign truck owners or operators must pay certain fees which are not offset by complementary domestic or foreign taxes on Vermont-registered trucks.

Defendants appeal, alleging, first, that the trial court sitting in equity and consisting of a presiding judge and an assistant judge,

---

[1] Pursuant to a stipulation filed with the superior court, the named plaintiffs represent:

the class of all interstate motor carriers whose base truck registrations are issued by jurisdictions other than the State of Vermont (that is the persons owning or operating motor trucks upon the highways of the State not registered or required to be registered in this State, in the language of 23 V.S.A. § 3007(b)), and who are now or may in the future become subject to the requirements and liable for payment of the fees set forth in 23 V.S.A. §§ 415, 3007, and 3010 and section 15(c), all as enacted and amended pursuant to Number 172 of the Acts of the 1982 (1981 adjourned) session of the Vermont Legislature.

had no jurisdiction to hear the case; and second, the fees imposed pursuant to the challenged statutes do not violate the Commerce Clause of the United States Constitution. We disagree and affirm the trial court's decision.

The plaintiffs also appeal the lower court's order denying plaintiffs' motion for a court-ordered refund of any fees, fines or penalties collected pursuant to the objectionable statutes. We affirm the denial of a refund.

In 1982 this Court considered another challenge to the constitutionality of certain fees imposed by Vermont on foreign-registered trucks. *American Trucking Associations, Inc.* v. *Conway,* 142 Vt. 17, 451 A.2d 42 (1982). There the plaintiff class challenged a fee system imposed by 23 V.S.A. §§ 415-419 (Cum. Supp. 1982) (Act 87).[2]

In the earlier case, this Court vacated the judgment of the lower court, which had upheld the fee system imposed under Act 87, and remanded for further factual findings. *Id.* at 23, 451 A.2d at 45. During the pendency of the appeal of that case, *American Trucking Associations, Inc., supra,* the Vermont legislature amended the fee system for foreign trucks by 1981, No. 172 (Adj. Sess.), now codified at 23 V.S.A. §§ 415-423 (Cum. Supp. 1982) (Act 172). *American Trucking, supra,* 142 Vt. at 19, 451 A.2d at 43. In this case, we consider the validity of the fee system imposed under Act 172.

Act 172 provides that owners or operators of trucks weighing 18,000 pounds or more, and operated on Vermont highways, whether registered in the state or not, must either: (1) pay a $50.00 annual fuel user's license fee, 23 V.S.A. §§ 415, 3007; (2)

---

[2] We summarized Act 87:

> Act No. 87 required operators of trucks with a gross weight of 18,000 pounds or more which were registered outside of Vermont to obtain a permit, costing $40, for each truck that would be owned or operated in Vermont. *Id.* at § 18 (codified at 23 V.S.A. § 415 (Cum. Supp. 1982)). In addition, a fee was charged for each time a foreign registered truck entered the state. The entry fee was $15, with a surcharge of $10 if the foreign truck was registered in a state that imposed more than one tax on trucks using its highways. *Id.* at § 19 (codified at 23 V.S.A. § 417 (Cum. Supp. 1982)). In lieu of these two charges, operators could purchase a single trip permit, which authorized a single entry into Vermont for a fee of $40. *Id.* at § 18a (codified at 23 V.S.A. § 415a (Cum. Supp. 1982)).

*American Trucking Associations, Inc.* v. *Conway, supra,* 142 Vt. at 18-19, 451 A.2d at 42-43.

acquire a "single trip permit," costing $50.00, 23 V.S.A. § 3010(a); or, (3) acquire a "temporary authorization" costing $50.00, 23 V.S.A. § 3010(b). There is no dispute that each of the above-mentioned statutes would produce the same effect—owners or operators of trucks weighing 18,000 or more must pay $50.00 to use Vermont highways. For the purposes of this opinion, any reference to the "$50.00 user fee" is a reference to all three of the challenged statutes, 23 V.S.A. §§ 415, 3007 and 3010(a), (b). In an amendment to the motor vehicle registration provision, Act 172 reduced by $50.00 the annual registration fee owed by owners of Vermont-registered trucks weighing 18,000 pounds or more. 23 V.S.A. § 367.

Plaintiffs sought declaratory and injunctive relief, contending that the fees imposed, under Act 172, on out-of-state trucks constituted an unlawful burden on interstate commerce and otherwise violated their rights under the Commerce Clause of the United States Constitution, the Supremacy Clause of the United States Constitution, the Revised Interstate Commerce Act, 49 U.S.C. § 10101 et seq., the Fourteenth and Fifth Amendments to the United States Constitution, the Privileges and Immunities Clause of the United States Constitution, and Article 9 of Chapter I of the Vermont Constitution. In addition to the request for injunctive and declaratory relief, plaintiffs sought repayment by the state of any fees collected pursuant to the challenged statutes.

When it considered the challenged statutes in conjunction with the registration fee refund of $50.00 which benefited only Vermont-registered trucks, 23 V.S.A. § 367, the trial court ruled that the statutes, 23 V.S.A. §§ 415, 3007 and 3010, all violated the Commerce Clause of the United States Constitution. However, the lower court neither discussed nor decided plaintiffs' other claims. In a motion to alter judgment, plaintiffs requested that the fees already collected under Act 172 be refunded. The court denied the motion. Defendants filed a timely appeal of the court's order declaring the statutes unconstitutional, while plaintiffs appealed the court's order denying them monetary relief.

## I.

Defendants' first claim on appeal is that the judgment is void for lack of jurisdiction, given the presence of an assistant judge during the adjudication of equitable matters. Under *Soucy* v.

*Soucy Motors, Inc.*, 143 Vt. 615, 620, 471 A.2d 224, 227 (1983), this fact would require reversal. In *Solomon* v. *Atlantis Development, Inc.*, 145 Vt. 70, 74-76, 483 A.2d 253, 256-57 (1984), however, we held that *Soucy* will be applied prospectively only. Because the court decided this case prior to December 12, 1983, the date *Soucy* was issued, this case is not subject to reversal under *Soucy*.

■ Nevertheless, under our law prior to *Soucy*, the presence of assistant judges in cases in equity could require reversal. See *Maskell* v. *Beaulieu*, 140 Vt. 75, 435 A.2d 699 (1981); *Pockette* v. *LaDuke*, 139 Vt. 625, 432 A.2d 1191 (1981). Here, however, the case was decided on stipulated facts, so there was no hearing and no fact-finding by the assistant judge. In *Brower* v. *Holmes Transportation, Inc.*, 140 Vt. 114, 435 A.2d 952 (1981), we determined that the assistant judges' presence did not constitute an improper influence "where only a legal ruling as to summary judgment is involved." *Id.* at 118, 435 A.2d at 954. Therefore, the unanimous decision based upon stipulated facts submitted without a hearing does not require reversal under pre-*Soucy* law.

## II.

Next we consider defendants' claim that the trial court erred when it ruled the challenged statutes unconstitutional under the Commerce Clause of the United States Constitution.

Initially, we must consider defendants' contention that the lower court improperly applied the test of *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274 (1977). Defendants contend that *Complete Auto*'s test only applies to Commerce Clause challenges to statutes which impose taxes on the privilege of doing business in the state, not "use" taxes. The proper test in our case, according to defendants, is the one employed in the pre-*Complete Auto* line of cases known as "flat fee" cases. See, e.g., *Capitol Greyhound Lines* v. *Brice*, 339 U.S. 542 (1950); *Aero Mayflower Transit Co.* v. *Board of Railroad Commissioners*, 332 U.S. 495 (1947); *Aero Mayflower Transit Co.* v. *Georgia Public Service Commission*, 295 U.S. 285 (1935). The third prong of the *Complete Auto* test—whether the tax discriminates against interstate commerce—is also an element of the test employed in the flat fee cases. See, e.g., *Aero Mayflower Transit Co., supra*, 332 U.S. at 501-03. The challenged components of Act 172 fail to survive

scrutiny under this "discrimination" element or prong; therefore, it does not matter which test is applied.

■ The trial court ruled that the challenged statutes, 23 V.S.A. §§ 415, 3007 and 3010, violated the Commerce Clause of the United States Constitution, in part, because the tax discriminates against interstate commerce. The United States Supreme Court has ruled that a state tax is not per se invalid because it burdens interstate commerce as interstate commerce may be made to pay its way. *Maryland* v. *Louisiana*, 451 U.S. 725, 754 (1981). Nevertheless,

> [o]ne of the fundamental principles of Commerce Clause jurisprudence is that no State, consistent with the Commerce Clause, may "impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business." *Northwestern States Portland Cement Co.* v. *Minnesota*, 358 U.S. 450, 458 (1959). See *Boston Stock Exchange* v. *State Tax Comm'n*, 429 U.S. 318, 329 (1977). This antidiscrimination principle "follows inexorably from the basic purpose of the Clause" to prohibit the multiplication of preferential trade areas destructive of the free commerce anticipated by the Constitution. *Boston Stock Exchange, supra.* See *Dean Milk Co.* v. *Madison*, 340 U.S. 349, 356 (1951).

*Id.* at 754. The challenged provisions of Act 172 discriminate against interstate commerce by providing a direct commercial advantage to Vermont truckers. See *Westinghouse Electric Corp.* v. *Tully*, 466 U.S. 388, 402-07 (1984). The trial court noted that, in considering the user fee requirements of the Act, it could not "but be aware of the consequences of the most recent amendments to the licensing and registration statutes," also part of the Act. We, too, are unable to ignore the registration statute and its effect. Act 172 not only imposed the annual $50.00 fees which have been directly challenged; but it also reduced by $50.00 the registration fee owed by Vermont truck operators or owners with trucks weighing 18,000 pounds or over, who would otherwise be subject to the challenged $50.00 fee. The registration fee reduction shifts the entire impact of the user fee legislation onto foreign operators, thereby discriminating against them.

We note that foreign truck operators who have complied with their home state registration requirements need not register their

trucks in Vermont if the operators' home jurisdictions afford Vermont-registered trucks the same benefit. 23 V.S.A. § 411. The parties stipulated to the fact that virtually all United States jurisdictions have similar reciprocity and registration provisions. Thus, as stipulated, virtually all motor trucks pass freely in interstate commerce if they have complied with their home state registration requirements. But, if the challenged Act were given effect, foreign truck operators, in the class subject to the fees, would be burdened with an additional cost of doing business if they decided to use Vermont highways. Vermont truckers, on the other hand, would be effectively exempt from the additional fees imposed by Act 172.

One might argue that any foreign-registered truck owner or operator could take advantage of the credit allowed Vermont truckers by simply registering their trucks in Vermont. That is, members of the plaintiff class, whose trucks are already registered in their home states, could avoid the Vermont use taxes challenged here by registering their trucks in Vermont. However, if Vermont could impose such a tax, then so could every other state throughout the nation. *National Bellas Hess, Inc.* v. *Department of Revenue*, 386 U.S. 753, 759 (1967). One can hardly imagine a result more "destructive of the free commerce anticipated by the Constitution." *Maryland* v. *Louisiana, supra*, 451 U.S. at 754. If, in order to avoid paying user fees in other states they entered, truckers were required to register their trucks in those other states, the cost of doing interstate business would be greatly increased, thereby burdening interstate commerce.

Defendants also argue that the Vermont registration fees, as well as purchase and use taxes, paid by Vermont truckers are complementary and therefore offset the user fees. We disagree. Vermont has statutorily exempted foreign truckers from the registration fees, 23 V.S.A. § 411, and the purchase and use tax, 32 V.S.A. §§ 8902(2) and 8903(a), (b). When a Vermont trucker pays his registration fee and his purchase and use tax, the Vermont trucker, by virtue of the reciprocity agreements, purchases the right to operate in other states as well as Vermont. See *American Trucking Associations, Inc.* v. *Quinn*, 437 A.2d 623, 627 (Me. 1981). On the other hand, under Act 172 when a foreign trucker pays the challenged user fee, he only buys the right to use Vermont roads; however, he already contributed indirectly to the Vermont highway maintenance fund by virtue of reciprocity. *Id.*

Act 172 forces foreign-based truckers to pay yet another fee for the use of Vermont highways without also exacting the same fee from Vermont truckers. We affirm the lower court's decision that provisions of Act 172, 23 V.S.A. §§ 415, 3007 and 3010, are unconstitutional and unenforceable.

## III.

We now turn to plaintiffs' appeal of the trial court's decision denying plaintiffs' request for repayment of fees, fines or penalties collected pursuant to the objectionable statutes.

As noted above, in their prayer for relief, plaintiffs asked that the lower court order defendants to repay plaintiffs any fees or penalties "wrongfully, illegally or unconstitutionally collected pursuant to the challenged statutes." Further, the parties stipulated that if parts of Act 172 were declared unconstitutional, any fees or penalties "wrongfully or illegally obtained by the State of Vermont . . . may be refunded pursuant to 23 V.S.A. § 3020, . . . 23 V.S.A. § 328 or in any other manner ordered by such court." In its initial order of July 27, 1983, the trial court failed to address the refund issue. In response to plaintiffs' subsequent motion to alter judgment, the lower court denied plaintiffs' refund request for three reasons. The court indicated that (1) because its jurisdictional power was confined to declaring the rights of the parties and ordering prospective relief, a declaratory judgment was sufficient without the need for injunctive relief; (2) a monetary judgment was barred by the doctrine of sovereign immunity; and (3) while the superior court recognized that it could conduct a de novo review of a decision of the Commissioner of Motor Vehicles, 23 V.S.A. § 3023, there was no such decision by the Commissioner in this case.

At the outset, we note that the stipulation regarding the refund, quoted above, provides little assistance in resolving this issue. The stipulation represented an agreement that, should the superior court or higher court declare Act 172 unconstitutional *and* should that court order the state to repay fees and penalties, the refund would be made "pursuant to 23 V.S.A. § 3020 . . . 23 V.S.A. § 328 or in any other manner ordered by such court." Thus, it cannot be argued that by stipulation the defendants conceded that the superior court had to refund the collected fees if it declared the statute invalid. Rather, the stipulation only recites

possible repayment methods *should* the named courts order the refund. This stipulation has no effect until a court orders the refund of the taxes. This we decline to do.

■ We base our decision on sovereign immunity. In Vermont, the state cannot be sued without its consent for injuries resulting from the exercise of functions essentially governmental in character. *Stoneman* v. *Vergennes Union High School District #5*, 139 Vt. 50, 53, 421 A.2d 1307, 1309 (1980). The imposition of a tax on fuel users for highway maintenance is an essential governmental activity, which could be performed only by a governmental entity. See *Dugan* v. *City of Burlington*, 135 Vt. 303, 304-05, 375 A.2d 991, 992 (1977); *Haselhuhn* v. *Huron-Clinton Metropolitan Authority*, 106 Mich. App. 461, 468, 308 N.W.2d 190, 193 (1981).

However, suits challenging the constitutionality of a state statute or its enforcement are not considered suits against the state for purposes of sovereign immunity. *Larson* v. *Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690-91 (1949); *Stoneman, supra*, 139 Vt. at 53, 421 A.2d at 1309. But an action to recover money which would be payable from state funds may be barred as a suit against the state. *Larson, supra*, 337 U.S. at 691 n.11; see also *Agency of Environmental Conservation* v. *Casella*, 142 Vt. 503, 505, 457 A.2d 633, 634 (1983).

This distinction is grounded in the principle of sovereign immunity that the state legislature should determine the state's liability for money judgments. "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent*." The Federalist No. 81, at 511-12 (A. Hamilton) (Wright ed. 1961) (emphasis in original).

The United States Supreme Court's analysis of when a suit is against a state for Eleventh Amendment purposes also supports this distinction. See, e.g., *Quern* v. *Jordan*, 440 U.S. 332, 337-38 (1979) (federal court's power is limited to prospective relief and may not include a retroactive award payable from the state treasury); *Edelman* v. *Jordan*, 415 U.S. 651, 663 (1974) (retroactive award of disability benefits wrongfully withheld barred as a suit against the state); *Ford Motor Co.* v. *Department of Treasury*, 323 U.S. 459, 463 (1945) (suit for a refund of taxes allegedly collected in violation of the Commerce Clause is a suit against the state).

This action for a tax refund is a suit against the state, and therefore, is barred by sovereign immunity unless the state has

waived its immunity. Appellees argue that 23 V.S.A. § 3020(b) is a waiver of sovereign immunity which would compel a refund in this case.

23 V.S.A. § 3020(b) provides:

> If the commissioner determines that a tax, penalty, interest or fee required by this chapter has been paid more than once by a licensee, or has been illegally or erroneously collected or computed, the excess amount paid or collected shall be credited to the tax account of the licensee . . . . Any balance of the excess amount remaining in the licensee's account after crediting the overpayment shall be refunded if requested . . . .

This section has the clear purpose of redressing errors in the enforcement or implementation of the diesel fuel tax. It merely provides for a refund mechanism if errors are made in determining what tax is imposed. "Although it has been stated that 'the courts will adjudge monetary claims founded upon statute, because the Legislature has inferentially indicated an intent to provide the sums needed to make good the statutory scheme,' in this case such an inference is negated by the fact that the legislature denied funding." *Stoneman, supra*, 139 Vt. at 54, 421 A.2d at 1310 (citation omitted). Here, the Vermont legislature has not inferentially indicated its intent to provide the amounts paid to the state under a statute later declared invalid. The legislature may be presumed to rely on the receipt of tax revenues received from valid properly administered enactments. The power to levy taxes and appropriate the resulting funds is a fundamental attribute of sovereignty. That power would be sorely compromised if private citizens were able to do what the executive branch may not do—spend state funds without legislative appropriation. "Where no appropriation has been made, no action for a money judgment can be maintained." *Id.* Therefore, we affirm the denial of a refund of taxes collected under Act 172.

*Affirmed.*