NATIONAL PRIVATE TRUCKING AS-
SOCIATION, Black Beauty Trucking,
Inc., Dale Bland Trucking, Inc., Franks
& Sons, Inc., Great American Lines,
Inc., Hi-Way Dispatch, Inc., OK Truck-
ing, Inc., and Rayls Brothers Transfer,
Inc., on behalf of themselves and all
other similarly situated, Petitioners,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, M.F. Renner, Commission-
er, Indiana Department of State Reve-
nue, Respondents.

No. 49T05–8706–TA–00026.

Tax Court of Indiana.

Aug. 14, 1987.

Norman R. Garvin, Andrew K. Light,
James H. Hanson, Scopelitis, Garvin &

Wickes, Indianapolis, Robert A. Hirsch, Alexandria, for petitioners.

Linley E. Pearson, Atty. Gen. of Indiana by James R. Green, Terry Duga, Deputy Attys. Gen., Indianapolis, for respondents.

## ORDER

FISHER, Judge.

Petitioners have filed a Motion for preliminary injunction pending original tax appeal. The respondent has filed a motion to dismiss alleging that the Court is without jurisdiction; that the petitioners have not followed statutory procedures; that the petitioners have filed this action prematurely; and that the petitioners have failed to state a claim. Hearing on both motions was held on August 3, 1987, and the Court took each motion under advisement.

## I.

## MOTION TO DISMISS

The parties have entered into a stipulation which has been filed and which, omitting caption and formal parts, reads as follows:

1. This Stipulation applies between, on the one hand, Petitioners and all interstate carriers whose commercial motor vehicles travel in and through Indiana and who are, thus, subject to and affected by the annual Supplemental Highway User Fee of $50.00 as required by Ind.Code § 6–6–8–1 *et seq.* ("Decal Tax") and have paid since 1985 and will pay to Respondents the Decal Tax (the "Class") and, on the other hand, Respondents.

2. If the Court does not certify the Class as defined herein, this Stipulation shall then apply to Petitioners and, if a class different than that defined herein is certified, then also to such certified class.

3. For the purpose of this Stipulation, "Protest Amounts" shall mean the Decal Tax payments made by Petitioners or any member of the Class.

4. From and after June 25, 1987, the Protest Amounts paid by Petitioners and any member of the Class shall be conclusively deemed to have been paid under protest and involuntarily. Respondents waive any defense or contention they may have (a) that the Protest Amounts paid after June 25, 1987, were paid voluntarily and (b) that such Protests Amounts would not be recoverable by Petitioners and the Class if they prevail on the merits of their claim.

5. Except as to the Protest Amounts paid from and after June 25, 1987, Respondents reserve all rights and defenses they may have as to (a) the claims of Petitioners and the members of the Class including, but not limited to, that all Protest Amounts paid before June 25, 1987, were voluntary or were not paid under protest and (b) any argument that refunds should only be prospective from June 25, 1987, if the Court rules that the Decal Tax is unconstitutional.

6. Petitioners reserve all rights to pursue retrospective refunds of all Protest Amounts paid by Petitioners and members of the Class before June 25, 1987.

7. If Petitioners or any member of the Class prevail on the merits and are entitled to a refund, Respondent will pay such refunds and interest on such amounts according to Ind.Code § 6–8.1–9–1 and Ind.Code § 6–8.1–9–2(c) or as ordered by the Court, provided, however, that nothing contained in this paragraph 7 shall be construed to waive any argument or defense identified in paragraph 5.

8. Respondents reserve the right to challenge class certification and definition, and nothing in this Stipulation shall be construed to be a stipulation as to class.

9. Because Petitioners' claims for refund have been denied, Respondents shall withdraw their Motion to Dismiss.

10. Petitioners shall file an amended petition for original tax appeal, omitting therefrom any claim for declaratory relief and any claim for relief under 42 U.S.C. § 1983.

11. Petitioners and Respondents agree to dismiss, without prejudice, the action pending in the Marion County Superior Court, Room 4 ("Superior Court Cause"), provided, however, Petitioners reserve the right to seek reinstatement of the Superior Court Cause, if necessary, at a later date. Petitioners and Respondents further agree to file an agreed entry to such effect in the Superior Court Cause for court approval.

■ The Court notes that respondent concedes the jurisdiction of this Court. While parties to litigation may not by agreement confer jurisdiction not otherwise conferred by law, *State ex rel. Wilson v. Howard Circuit Court* (1957), 237 Ind. 263, 145 N.E.2d 4, the Court finds that the objections of respondents to the Court's jurisdiction have been resolved and the Court further finds that it has jurisdiction to issue the injunction inasmuch as petitioner has complied with requirements of IC 33-3-5-11(b).[1]

## II.

## PRELIMINARY INJUNCTION

### STATEMENT OF CASE

The petition brought by petitioners seeks to enjoin the respondent from collecting the Supplemental Highway User Fee (SHUF) imposed by IC 6-6-8-1 *et seq.* SHUF is a flat tax of $50 for each motor vehicle meeting the statutory specifications operating in the State of Indiana. SHUF applies equally to all such vehicles whether engaged in interstate commerce or intrastate commerce. SHUF is due April 1st of each year and generates annual revenues of approximately $27 million. Respondent anticipates that $2 to $3 million will be collected from August 3, 1987 to March 31, 1988. SHUF

is a "listed tax". IC 6-6-8-6(c). Other facts will be stated below.

## DISCUSSION & DECISION

The issue petitioners aver will be raised in the original tax appeal is whether the SHUF is in violation of the commerce clause, U.S. CONST. art I, § 8, cl. 3.[2] Since this issue affects both the validity of an act of the Indiana General Assembly and whether $27 million dollars of revenue annually may be assessed and collected, the Court finds that the issues to be raised are substantial.

While the arguments both for and against the constitutionality of the SHUF are not without merit, the Supreme Court of the United States has addressed the matter of a flat tax, similar to SHUF in the case of *American Trucking Associations, Inc. v. Scheiner*, —— U.S. ——, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). While the parties have not briefed specifically the application of the *Scheiner* case to the SHUF, a reading of *Scheiner* strongly suggests to the Court and the Court finds that petitioners have a reasonable opportunity to prevail in the original tax appeal.

A much closer question is presented as to the equitable considerations involved in enjoining collection of the tax and the state's interest in collecting the tax *pendente lite*. The question narrows itself to the likelihood of a refund if petitioners are successful as opposed to the harm to the state, if the tax is not collected *pendente lite*.

■ The "equitable considerations" provision of IC 33-3-5-11(c) incorporates the general body of traditional equity concepts. *See Porter Memorial Hospital v. Malak* (1985), Ind.App., 484 N.E.2d 54, 61. The basic elements to be considered when a petitioner seeks injunction relief are: (1) that the petitioner will suffer irreparable harm if relief is not granted; (2) that the

---

1. IC 33-3-5-11(b) provides:
   (b) A taxpayer who wishes to enjoin the collection of a tax pending the original tax appeal must file a petition with the tax court to enjoin the collection of the tax. The petition must set forth a summary of:
   (1) the issues that the petitioner will raise in the original tax appeal; and

(2) the equitable considerations for which the tax court should order the collection of the tax to be enjoined.

2. "The Congress shall have power to regulate commerce ... among the several States...."

harm to the petitioner if relief is denied outweighs the harm to the respondent if relief is granted; (3) that the public interest will not be harmed if relief is granted; and (4) that petitioner will post sufficient security to cover costs and damages which the respondent may suffer if it is wrongfully enjoined. *Wells v. Auberry* (1982), Ind. App., 429 N.E.2d 679.

## A) IRREPARABLE HARM

First, the petitioners must show that they will suffer some irreparable injury in the event that equitable relief is denied. This question suggests "some minimum of probable injury which is required to get the court's attention...." *Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.* (4th Cir.1977), 550 F.2d 189, 196.

In the case at bar petitioners base their claim of irreparable injury on the premise that not only do they suffer economic injury, but also that the alleged constitutional violation puts them at a competitive disadvantage with purely intrastate truckers. Petitioners claim that they lack an adequate remedy at law in view of the fact that if they prevail on the merits in the original tax appeal but cannot obtain a refund of the taxes paid pending the original tax appeal, the harm is irreparable. Other state courts who have decided this issue have found their respective refund statutes inapplicable, hence the petitioners fear an empty victory on the merits. Three of the four cases cited in support of this position share nearly identical reasoning. In *Continental Trailways, Inc. v. Director* (1986), 102 N.J. 526, 509 A.2d 769, New Jersey's Supreme Court held that the Autobuses Act, N.J.STAT.ANN. 48:4–20, imposes an unconstitutional burden on interstate commerce. Addressing the question of a refund, the Court noted that the Autobuses Act did not contain a refund provision. The taxpayers argued that the State Tax Uniform Procedure Law, N.J.STAT.ANN. 54:48–1 to –5, provided the basis for a refund claim. "State tax", as used in the refund statute, is defined as "any tax which is payable to or collectible by the state tax commissioner...." N.J.STAT. ANN. 54:48–2. The Court found that the

taxpayers could not bring a claim for refund under the State Tax Uniform Procedure Act because the autobus tax was "not 'payable to or collectible by the state tax commissioner' but payable to the Director of [Division of Motor Vehicles], pursuant to N.J.S.A. 48:4–21." *Continental Trailways*, 509 A.2d at 780 (footnote omitted). The Court then disposed of the taxpayers' common-law refund claim on the grounds that there was no evidence taxpayer paid the tax under protest or duress. In *Private Truck Council of America, Inc. v. Secretary of State* (1986), Me., 503 A.2d 214, the Maine Supreme Court struck down the reciprocal truck tax law, ME.REV. STAT.ANN. tit. 29, § 2243–C, as unconstitutional under the commerce clause. The taxpayer's attempted to claim a refund under ME.REV.STAT.ANN. tit. 36, § 152, which provides that a tax need not be paid "under protest or under duress to entitle the taxpayer to apply for a refund ... of the tax." "Tax" was defined as "the total amount required to be paid ... or collected ... under this title...." ME.REV.STAT. ANN. tit. 36, § 111(5). "Taxpayer" was defined as "any person required to file a return ... or to pay ... or collect ... any tax imposed by this title." ME.REV.STAT. ANN. tit. 36, § 111(7). Because the reciprocal truck tax was imposed under title 29 instead of title 36, the Court held that the refund statute was not applicable. The taxpayers were unable to prove that they paid any tax under duress so they could not obtain relief under the common law.

In *Private Truck Council of America, Inc. v. New Hampshire* (1986), 128 N.H. 466, 517 A.2d 1150, the New Hampshire Supreme Court held that the retaliatory truck tax, N.H.REV.STAT.ANN. 260:53, discriminated against interstate commerce and was therefore invalid. The carriers argued that the Road Toll Refund Statute, N.H.REV.STAT.ANN. 260:50, was applicable to refunds of the retaliatory truck tax. The Road Toll Refund Statute provided that "If the director decides that any road tolls ... have been erroneously or illegally collected from any distributor, such distributor shall be entitled to a refund there-

of...." The Court held that the statute applied only to road tolls collected from distributors of motor fuels and not to taxes collected from the carriers. The carriers were also denied any common law right to refund because the taxes were not paid involuntarily.

The Vermont Supreme Court took a different approach in *American Trucking Associations, Inc. v. Conway* (1986), 146 Vt. 579, 508 A.2d 408. The fuel user license fees and trip permit fees statute, VT.STAT. ANN. tit. 23, §§ 415, 3007, 3010, was declared unconstitutional under the commerce clause. *American Trucking Associations, Inc. v. Conway* (1986), 146 Vt. 574, 508 A.2d 405. The taxpayers argued that they were entitled to a refund under VT. STAT.ANN. tit. 23, § 3020(b), which provides that "If the commissioner determines that a tax ... or fee required by this chapter ... has been illegally or erroneously collected or computed, the excess amount paid or collected shall be credited to the tax account of the license.... Any balance of the excess amount ... after crediting the overpayment shall be refunded if requested...." The parties also stipulated that if any part of the challenged statutes were declared unconstitutional, the taxpayers could obtain a refund pursuant to § 3020(b) or in any other manner ordered by the court. The Court held first that the stipulation merely concerned possible repayment methods if the court ordered a refund. Since the Court decided not to order a refund, the stipulation was to no avail. The Court based its decision on the principle of sovereign immunity. Recognizing that suits challenging the constitution-

ality of a state statute are not considered suits against the state for the purpose of sovereign immunity, the Court reasoned that a refund suit was an action to recover money from the state which could be barred by sovereign immunity unless the state had waived its immunity. The Court held that the refund statute was not a clear expression of the legislature's intent to waive sovereign immunity. The Court characterized § 3020(b) as a statute which "merely provides for a refund mechanism if errors are made in determining what tax is imposed." The Court made no mention of any common law right of refund.

Even though Indiana provides a statutory refund,[3] petitioners argue that this remedy is not adequate because they will not be compensated for the competitive disadvantage suffered or for the loss of the time value of money. Furthermore, the petitioners argue that in light of the recent state cases discussed above, the statutory remedy may be illusory;[4] thus the theoretical legal remedy is not as "complete, practicable, and efficient as that which equity could afford." *Boise Artesian Hot & Cold Water Co. v. Boise City* (1909), 213 U.S. 276, 281, 29 S.Ct. 426, 428, 53 L.Ed. 796. *See Porter Memorial Hospital v. Malak* (1985), Ind.App., 484 N.E.2d 54, 62.

Petitioners also point out that if the statute is found to be unconstitutional, our Courts might decide the tax to be unconstitutional prospectively only and not retrospectively. *See Scheiner*, 107 S.Ct. at 2847–48. In this case, the refund statute would be of no avail.

---

3. 6–8.1–9–1 *et seq.*

4. The 1987 General Assembly has enacted IC 6–6–8–12 (West Supp.1987), which will become effective September 1, 1987. IC 6–6–8–12 provides:

> (1) If the commissioner determines that a carrier has erroneously paid the fee imposed under this chapter and obtained an emblem, the carrier is entitled to a refund of the erroneously paid fee.
> (b) To obtain a refund under this section, the carrier must file a written claim with the commissioner:
> (1) within six (6) months after the expiration date of the emblem obtained;

> (2) that states the reason a refund should be granted; and
> (3) that includes an affirmation by the claimant.

The addition of this section further confuses the issue of whether petitioners have an adequate remedy at law since it is unclear how it relates to IC 6–8.1–9–1 or how it relates to the issue of sovereign immunity. Moreover, the language used is similar to the language in the Vermont statute which was construed against the taxpayer in *American Trucking Associations v. Conway*. 508 A.2d at 414.

■ Stipulations 4 and 5 as stated above add to the confusion. The thrust of these stipulations goes to the ability of petitioners to sue for a common law refund in case the statute is ultimately found unconstitutional, but the court also finds that the refund statute is inapplicable. *See Continental Trailways*, 509 A.2d at 779–82; *Private Truck Council v. Secretary of State*, 503 A.2d at 219; *Private Truck Council v. New Hampshire*, 517 A.2d 1150. In effect, the petitioners are assured that they will be able to obtain a refund of taxes yet to be paid, while the respondents retain the right to argue against refund of the taxes which have already been collected. The stipulation may not fully protect petitioners, though, because it neither decides nor commits to the question of sovereign immunity. *See American Trucking Associations v. Conway*, 508 A.2d 408. First, whether taxes are paid voluntarily is irrelevant to the question of whether a refund claim is barred by sovereign immunity. Second, even if the stipulation was somehow relevant to the issue of sovereign immunity, the Attorney General does not have the power to consent to suit against the state if the state has not consented to be sued; consent may be given only by Indiana General Assembly. *Ford Motor Co. v. Department of Treasury* (1945), 323 U.S. 459, 467–68, 65 S.Ct. 347, 352, 89 L.Ed. 389. Since the stipulation does not decide the issue of sovereign immunity, the petitioners have some, albeit slight, basis for maintaining that they have no adequate remedy at law.[5]

The decision to grant preliminary relief cannot be intelligently made unless the trial court knows how much the precaution will cost the defendant. If it costs very little, the court should be more apt to decide that the threatened injury is "irreparable" for purposes of interlocutory relief. In addition ..., even a "possible" irreparable injury has been held to suffice if there is strong probability of success on the merits.
*Blackwelder Furniture*, 550 F.2d at 196.

■ Given the uncertain applicability of the refund statute, and thus the potential for irreparable injury, and in view of the strong reasonable opportunity that the petitioners will prevail on the merits, the Court finds that the petitioners have shown irreparable injury may occur if the collection of the SHUF is not enjoined *pendente lite*. *See Wells v. Auberry*, 429 N.E.2d at 683 ("[A]s the imminence of irreparable harm is reduced, the *prima facie* case requirement expands to the test of probability of recovery on the merits.").

## B) HARM TO RESPONDENTS

The petitioners argue that the harm to the respondents will be slight if the Court grants the injunction and that in the alternative, if the Court orders the respondent to deposit the tax payments in an escrow account, the harm to the respondent will be even less.

The respondent argues that if *any* equitable relief is granted, the State will be greatly harmed because it will lose the benefit of the use of those funds whether the collection is enjoined or the tax is placed in an escrow account.

Based on the evidence presented at the injunction hearing, it appears that the SHUF constitutes a very small percentage of the funds used by the State for the construction, repair, and maintenance of highways. For the fiscal year ended June 30, 1987, SHUF totaled approximately $27 million. The respondent estimated that based on past figures, $2 to 3 million would be collected until the end of the SHUF year. The Court notes, however, that this figure should be even lower because the Indiana General Assembly has amended the SHUF statute. The amendment allows carriers to purchase a half-year permit and emblem, effective for a half year from October 1 through March 31 of the succeeding year, for a fee of only $25. IC 6–6–8–7(b), (c) (Supp.1987) (amending IC 6–6–8–7) (effective Sept. 1, 1987). This amendment

---

**5.** Indeed, if the stipulations could be assured of being enforceable there would be no need for

the order herein.

would probably lower the estimated collections to $1.5 to 2 million. The taxes are distributed through the Motor Vehicle Highway Fund: 53% to the State Department of Highways; 32% to 92 counties; and 15% to cities and towns having highways departments.

The State's portion of this tax amounts to only $12 to 13 million a year; the State Department of Highway's annual budget for repair, construction, and maintenance amounts to $220 to 230 million. The amount sought to be enjoined by petitioners is only 53% of the $1.5 to 2 million collectible before April 1, 1988. The budgets of the counties, cities, and towns also dwarf the relative amount of tax sought to be enjoined. For the entire year, SHUF constitutes an estimated 7.4% of the counties budgets and approximately 5.1% of the cities' and towns' budgets.

The Court is well aware of the scarcity of funds for highway repair and maintenance. In this sense, it comes as no surprise that the respondent's various witnesses testified that the loss of these funds would cause some harm. Loss of any funds will harm state and local governments. As testimony by a witness for the State Department of Highways indicated, the government also stands to lose some flexibility in the use of funds. But the fact is that the amount of SHUF to be collected for the remainder of the taxable year is very small in comparison to the total revenues budgeted by the state and local governments. And with that it mind, the harm to the petitioners by denying equitable relief is not outweighed by the harm to the respondent if relief is granted.

### C) PUBLIC INTEREST

The petitioners also argue that granting the injunction is in the public interest because public policy considerations do not favor the continuation of imposition of an unconstitutional tax. The respondent argues that the public interest will be harmed because if the state and local governments lose the use of the funds, the motoring public will be harmed by stoppages in road repair and maintenance projects.

As was discussed above, the funds to be enjoined or placed in escrow are miniscule in amount compared to the total revenues available for highway repair and maintenance. Therefore, it is ludicrous to suggest that the collective wheels of the motoring public will grind to a halt because the loss of funds renders the government unable to maintain its highways at most, the motoring public will experience slight inconvenience.

The Court has made it clear to the parties that a decision on the merits will be made before the end of calendar year 1987. If the petitioner is successful on the merits, the Indiana General Assembly will have an opportunity before the end of the fiscal year to enact legislation providing for revenues to replace those lost; thus highway repair and construction programs currently relying on SHUF yet to be collected should not be appreciably hindered. Likewise if the respondent should prevail on the merits, the SHUF funds placed in escrow will become available and the bulk of SHUF collected April 1, 1988, will be unaffected.

### D) SECURITY

Petitioners maintain that whether the Court orders collection of the tax to be enjoined or, in the alternative, orders the establishment of an interest bearing escrow account, the respondent will not be harmed in case of a wrongful injunction because the time value of money can be recovered through the accrual of interest.

If the collection of tax is enjoined and the statute is subsequently upheld on constitutional grounds, the respondent would probably encounter great expense in any attempt to collect the tax. On the other hand, if the statute is upheld and the funds have been deposited in an escrow account, the respondent will have immediate access to the money previously collected. Therefore it would be appropriate to require only a nominal bond. *See International Controls Corp. v. Vesco* (2d Cir.1974), 490 F.2d 1334, 1356.

### E) CONCLUSION

Taking all the factors into account, the Court finds that the petitioners are entitled to equitable relief. Because both

parties are primarily concerned about the availability of funds once the case is decided on the merits, an order for the escrow account is in the best interests of both parties. *See, e.g., Huie v. Private Truck Council of America, Inc.* (1984), Ind., 466 N.E.2d 435.

Accordingly it is hereby ORDERED that

1. That the petitioner shall file a bond or security in the amount of $1,000.00 after which;

2. (A) All respondents and all agents or other persons acting under respondents' direction, supervision, or control, are ordered to pay over to the escrow agent hereinafter named, for deposit into the escrow fund established hereunder all monies hereafter collected or received pursuant to IC 6-6-8-1 *et seq.* That at all times, such monies collected or received shall be handled in manner which allows them to be identified as escrow fund monies and at no time shall such monies become a part of or deposited into the motor vehicle highway account or otherwise become a part of or deposited into the state treasury. In collecting, receiving, or otherwise dealing with such monies, all respondents and all agents or other persons acting under such respondents direction, supervision, or control shall be deemed to be acting under the Court's jurisdiction for the purpose of this order. The express purpose of this order is to insure a refund mechanism if the Court finds that IC 6-6-8-1 *et seq.* is unconstitutional and the monies collected pursuant thereto were wrongfully or illegally charged and collected by respondents.[6]

(B) Marjorie H. O'Laughlin, as Treasurer of the State of Indiana, is hereby appointed as Escrow Agent responsible for administering the escrow fund established hereunder.

(C) The Escrow Agent shall maintain adequate records which identify, by name, address, dates, and amounts of monies paid, all persons from whom monies have been received or collected for deposit in the escrow fund. The said Escrow Agent may receive assistance from respondent or others as necessary to enable her to maintain the aforesaid records in a manner which least inconveniences the Escrow Agent. The records, however, shall be made available at Indianapolis, Indiana, to the petitioners or petitioners' attorney upon reasonable notice.

(D) The escrow agent shall invest all such escrow funds, and income accrued thereon, at commercially reasonable rates and in a commercially reasonable and prudent manner.

(E) All such monies and income earned thereon shall be held in escrow until further order of this Court.

3. The enforcement of IC 6-6-8-1 *et seq.* is in no way affected by this order.

4. Petitioners having filed a pleading entitled "Second Amended Petition for Original Tax Appeal", the respondent is directed to respond thereto as provided by the rules of this Court.

5. That this cause may be decided on the merits at the earliest possible date, the parties shall each hereafter expedite this case in every way possible.

6. The petitioners have filed their motion to determine the propriety of a class action and for notice and accordingly said motion is now set for hearing on Friday, August 21, 1987, at 10:30 A.M. in Room 413, State House, Indianapolis, Indiana. Pre-hearing briefs shall be exchanged and filed on or before August 18, 1987.

---

**6.** If the respondent can develop a procedure which will assure with no doubt or reservation a refund of SHUF collected *pendente lite* should IC 6-6-8-1 *et seq.* be found unconstitutional, the court, on motion and after hearing, will reconsider its order herein.