**AMERICAN TRUCKING ASSOCIATIONS, INC., George Transfer, Inc., and Churchill Truck Lines, Inc. Individually and on behalf of all others similarly situated, Petitioners,**

v.

**STATE of Indiana, M.F. Renner, Commissioner, Indiana Department of State Revenue, John P. Isenbarger, Director Indiana Department of Highways, Marge O'Laughlin, Treasurer of the State of Indiana, Ann DeVore, Auditor of the State of Indiana, and John T. Shettle, Superintendent of the Indiana State Police, Respondents.**

No. 49T05–8706–TA–00027.

Tax Court of Indiana.

Aug. 14, 1987.

J. Spencer Harmon, Wyatt, Tarrant, Combs & Orbison, New Albany, Daniel R. Barney, Robert Digges, Jr., ATA Litigation Center, Alexandria, for petitioners.

Linley E. Pearson, Atty. Gen. of Indiana by James R. Green, Terry Duga, Deputy Attys. Gen., Indianapolis, for respondents.

## ORDER

FISHER, Judge.

Petitioners have filed a Motion for preliminary injunction pending original tax appeal. The respondent has filed a motion to dismiss alleging that the Court is without jurisdiction; that the petitioners have not followed statutory procedures; that the petitioners have filed this action prematurely; and that the petitioners have failed to state a claim. Respondent has also filed a motion to disqualify counsel. Hearing on all motions was held on August 3, 1987, and the Court took each motion under advisement.

### I.

### MOTION TO DISMISS

IC 33–3–5–11 sets forth procedures to be followed with respect to the filing of an original tax appeal and to requesting an injunction.[1]

IC 33–3–5–11(b) sets forth the procedure a taxpayer must follow to request an injunction pending an original tax appeal. In

---

1. IC 33–3–5–11 provides:

(a) A taxpayer who wishes to initiate an original tax appeal must file a petition in the tax court to set aside the final determination of the department of state revenue or the state board of tax commissioners. If a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal.

(b) A taxpayer who wishes to enjoin the collection of a tax pending the original tax appeal must file a petition with the tax court to enjoin the collection of the tax. The petition must set forth a summary of:

(1) the issues that the petitioner will raise in the original tax appeal; and

(2) the equitable considerations for which the tax court should order the collection of the tax to be enjoined.

(c) After a hearing on the petition filed under subsection (b), the tax court may enjoin the collection of the tax pending the original tax appeal, if the tax court finds that:

(1) the issues raised by the original tax appeal are substantial;

(2) the petitioner has a reasonable opportunity to prevail in the original tax appeal; and

(3) the equitable considerations favoring the enjoining of the collection of the tax outweigh the state's interests in collecting the tax pending the original tax appeal.

this case the petitioners have filed a petition and have summarized the issues which they will raise in the original tax appeal and have summarized the equitable considerations for which the Court should order collection of the tax enjoined.

It is only jurisdiction to enter the injunction which is here under consideration.

■ Inasmuch as IC 33-3-5-11(b)(1) says "will raise" it is not necessary that the original tax appeal be filed or be ripe for filing at the time the injunction is requested. It is not necessary to determine here how much, if any, time may elapse after an injunction is granted before the original tax appeal must be filed, or be ripe for filing. Such determination is left for the future.

The Court does not need to consider or decide whether a final determination has been made or whether the Court otherwise has jurisdiction to hear the matter in dispute on the merits.[2]

■ The Court finds that the petitioners have complied with the statutory requirements in requesting an injunction and that the Court has jurisdiction to issue an injunction if it finds that the petitioners have carried their burden of proof: that the issues raised are substantial; that the petitioners have a reasonable opportunity to prevail in the original tax appeal; and that the equitable considerations favoring the injunction outweigh the state's interests in collecting the tax *pendente lite*.

The other issues raised by respondent in its motion go to whether a final determination has been made, whether the case is otherwise ripe for an original tax appeal, or whether the injunction should in fact be granted.

The motion to dismiss is overruled and denied.

## II.

### MOTION TO DISQUALIFY ATTORNEY

■ Respondent seeks to disqualify Robert Digges, Jr. as an attorney in this cause.

Respondent argues that by executing an affidavit as to certain matters, Mr. Digges became a witness and is therefore disqualified from continuing as an attorney in this case. The Court having taken said motion under advisement finds that the facts to which Mr. Digges has sworn are not in dispute. Rule 3.7 of the Ind. Rules of Professional Conduct provides *inter alia* that an attorney shall not act as advocate when also a witness except where the testimony relates to an uncontested issue. The official comment to the Rule states that "if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical." Furthermore, it appears that Rule 3.7 limits the restriction to those cases where the attorney is a necessary witness.[3]

Respondent has not shown that attorney Digges is a necessary witness and it is apparent that the facts stated in the affidavit are uncontested.

Accordingly, the Motion to Disqualify Attorney is denied. Counsel however are admonished to review and heed the provisions of Rule 3.7.

In connection with this motion, petitioners have filed requests for admissions and requested that the time within which respondent should answer be shortened.

The Court being advised denies said motion to shorten time. Petitioners are granted leave to renew said motion if they deem such to be necessary at a later date.

## III.

### PRELIMINARY INJUNCTION

### STATEMENT OF CASE

The petition brought by petitioners seeks to enjoin the respondent from collecting the Supplemental Highway User Fee (SHUF) imposed by IC 6-6-8-1 *et seq*. SHUF is a flat tax of $50 for each motor vehicle meet-

---

**2.** The Court notes that a petition denominated "Original Tax Appeal Petition" has been filed. It is left to future motions, argument, and decision whether the Court has jurisdiction as to the issues raised in said pleading.

**3.** *See* G. HAZZARD & W. HODES, THE LAW OF LAWYERING: A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT 407 (1985).

ing the statutory specifications operating in the State of Indiana. SHUF applies equally to all such vehicles whether engaged in interstate commerce or intrastate commerce. SHUF is due April 1st of each year and generates annual revenues of approximately $27 million. Respondent anticipates that $2 to $3 million will be collected from August 3, 1987 to March 31, 1988. SHUF is a "listed tax." IC 6–6–8–6(c). Other facts will be stated below.

## DISCUSSION & DECISION

■ The issue petitioners aver will be raised in the original tax appeal is whether the SHUF is in violation of the commerce clause, U.S. CONST. art. I, § 8, cl. 3.[4] Since this issue affects both the validity of an act of the Indiana General Assembly and whether $27 million dollars of revenue may be assessed and collected, the Court finds that the issues to be raised are substantial.

While the arguments both for and against the constitutionality of the SHUF are not without merit, the Supreme Court of the United States has addressed the matter of a flat tax, similar to SHUF in the case of *American Trucking Associations, Inc. v. Scheiner*, —— U.S. ——, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). While the parties have not briefed particularly the application of the *Scheiner* case to the SHUF, a reading of *Scheiner* strongly suggests to the Court and the Court finds that petitioners have a reasonable opportunity to prevail in the original tax appeal.

A much closer question is presented as to the equitable considerations involved in enjoining collection of the tax and the state's interest in collecting the tax *pendente lite.* The question narrows itself to the likelihood of a refund if petitioners are successful as opposed to the harm to the state, if the tax is not collected *pendente lite.*

The "equitable considerations" provision of IC 33–3–5–11(c) incorporates the general body of traditional equity concepts. *See Porter Memorial Hospital v. Malak* (1985), Ind.App., 484 N.E.2d 54, 61. The basic elements to be considered when a petitioner

seeks injunction relief are: (1) that the petitioner will suffer irreparable harm if relief is not granted; (2) that the harm to the petitioner if relief is denied outweighs the harm to the respondent if relief is granted; (3) that the public interest will not be harmed if relief is granted; and (4) that petitioner will post sufficient security to cover costs and damages which the respondent may suffer if it is wrongfully enjoined. *Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679.

### A) IRREPARABLE HARM

First, the petitioners must show that they will suffer some irreparable injury in the event that equitable relief is denied. This question suggests "some minimum of probable injury which is required to get the court's attention...." *Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.* (4th Cir.1977), 550 F.2d 189, 196.

In the case at bar, petitioners base their claim of irreparable injury on the premise that not only do they suffer economic injury, but also that the alleged constitutional violation puts them at a competitive disadvantage with purely intrastate truckers. Petitioners claim that they lack an adequate remedy at law in view of the fact that if they prevail on the merits in the original tax appeal but cannot obtain a refund of the taxes paid pending the original tax appeal, the harm is irreparable. Other state courts who have decided this issue have found their respective refund statutes in applicable, hence the petitioners fear an empty victory on the merits. Three of the four cases cited in support of this position share nearly identical reasoning. In *Continental Trailways, Inc. v. Director* (1986), 102 N.J. 526, 509 A.2d 769, New Jersey's Supreme Court held that the Autobuses Act, N.J.STAT.ANN. 48:4–20, imposes an unconstitutional burden on interstate commerce. Addressing the question of a refund, the Court noted that the Autobuses Act did not contain a refund provision. The taxpayers argued that the State Tax Uniform Procedure Law, N.J.STAT.ANN. 54:48–1 to –5, provided the basis for a

---

**4.** "The Congress shall have power to regulate   commerce ... among the several States...."

refund claim. "State tax", as used in the refund statute, is defined as "any tax which is payable to or collectible by the state tax commissioner...." N.J.STAT. ANN. 54:48–2. The Court found that the taxpayers could not bring a claim for refund under the State Tax Uniform Procedure Act because the autobus tax was "not 'payable to or collectible by the state tax commissioner' but payable to the Director of [Division of Motor Vehicles], pursuant to N.J.S.A. 48:4–21." *Continental Trailways*, 509 A.2d at 780 (footnote omitted). The Court then disposed of the taxpayers' common-law refund claim on the grounds that there was no evidence the taxpayers paid the tax under protest or duress. In *Private Truck Council of America, Inc. v. Secretary of State* (1986), Me., 503 A.2d 214, the Maine Supreme Court struck down the reciprocal truck tax law, ME.REV. STAT.ANN. tit. 29, § 2243–C, as unconstitutional under the commerce clause. The taxpayers attempted to claim a refund under ME.REV.STAT.ANN. tit. 36, § 152, which provides that a tax need not be paid "under protest or under duress to entitle the taxpayer to apply for a refund ... of the tax." "Tax" was defined as "the total amount required to be paid ... or collected ... under this title...." ME.REV.STAT. ANN. tit. 36, § 111(5). "Taxpayer" was defined as "any person required to file a return ... or to pay ... or collect ... any tax imposed by this title." ME.REV.STAT. ANN. tit. 36, § 111(7). Because the reciprocal truck tax was imposed under title 29 instead of title 36, the Court held that the refund statute was not applicable. The taxpayers were unable to prove that they paid any tax under duress so they could not obtain relief under the common law.

In *Private Truck Council of America, Inc. v. New Hampshire* (1986), 128 N.H. 466, 517 A.2d 1150, the New Hampshire Supreme Court held that the retaliatory truck tax, N.H.REV.STAT.ANN. 260:53, discriminated against interstate commerce and was therefore invalid. The carriers argued that the Road Toll Refund Statute, N.H.REV.STAT.ANN. 260:50, was applicable to refunds of the retaliatory truck tax. The Road Toll Refund Statute provided that "If the director decides that any road tolls ... have been erroneously or illegally collected from any distributor, such distributor shall be entitled to a refund thereof...." The Court held that the statute applied only to road tolls collected from distributors of motor fuels and not to taxes collected from the carriers. The carriers were also denied any common law right to refund because the taxes were not paid involuntarily.

The Vermont Supreme Court took a different approach in *American Trucking Associations, Inc. v. Conway* (1986), 146 Vt. 579, 508 A.2d 408. The fuel user license fees and trip permit fees statute, VT.STAT. ANN. tit. 23, §§ 415, 3007, 3010, was declared unconstitutional under the commerce clause. *American Trucking Associations, Inc. v. Conway* (1986), 146 Vt. 574, 508 A.2d 405. The taxpayers argued that they were entitled to a refund under VT. STAT.ANN. tit. 23, § 3020(b), which provides that "If the commissioner determines that a tax ... or fee required by this chapter ... has been illegally or erroneously collected or computed, the excess amount paid or collected shall be credited to the tax account of the license.... Any balance of the excess amount ... after crediting the overpayment shall be refunded if requested...." The parties also stipulated that if any part of the challenged statutes were declared unconstitutional, the taxpayers could obtain a refund pursuant to § 3020(b) or in any other manner ordered by the court. The Court held first that the stipulation merely concerned possible repayment methods if the court ordered a refund. Since the Court decided not to order a refund, the stipulation was to no avail. The Court based its decision on the principle of sovereign immunity. Recognizing that suits challenging the constitutionality of a state statute are not considered suits against the state for the purpose of sovereign immunity, the Court reasoned that a refund suit was an action to recover money from the state which could be barred by sovereign immunity unless the state had waived its immunity. The Court held that the refund statute was not a clear

expression of the legislature's intent to waive sovereign immunity. The Court characterized § 3020(b) as a statute which "merely provides for a refund mechanism if errors are made in determining what tax is imposed." The Court made no mention of any common law right of refund.

Even though Indiana provides a statutory refund,[5] petitioners argue that this remedy is not adequate because they will not be compensated for the competitive disadvantage suffered or for the loss of the time value of money. Furthermore, the petitioners argue that in light of the recent state cases discussed above, the statutory remedy may be illusory;[6] thus the theoretical legal remedy is not as "complete, practicable, and efficient as that which equity could afford." *Boise Artesian Hot & Cold Water Co. v. Boise City* (1909), 213 U.S. 276, 281, 29 S.Ct. 426, 428, 53 L.Ed. 796. *See Porter Memorial Hospital v. Malak* (1985), Ind.App., 484 N.E.2d 54, 62.

Petitioners also point out that if the statute is found to be unconstitutional, our Courts might decide the tax to be unconstitutional prospectively only and not retrospectively. *See Scheiner*, 107 S.Ct. at 2847–48. In this case, the refund statute would be of no avail.

The decision to grant preliminary relief cannot be intelligently made unless the trial court knows how much the precaution will cost the defendant. If it costs very little, the court should be more apt to decide that the threatened injury is "irreparable" for purposes of interlocutory relief. In addition ..., even a "possible" irreparable injury has been held to

suffice if there is strong probability of success on the merits.

*Blackwelder Furniture*, 550 F.2d at 196.

Given the uncertain applicability of the refund statute and thus the potential for irreparable injury, and in view of the strong reasonable opportunity that the petitioners have to prevail on the merits, the Court finds that the petitioners have shown irreparable injury may occur if the collection of the SHUF is not enjoined *pendente lite*. *See Wells v. Auberry*, 429 N.E.2d at 683 ("[A]s the imminence of irreparable harm is reduced, the *prima facie* case requirement expands to the test of probability of recovery on the merits.").

**B) HARM TO RESPONDENTS**

The petitioners argue that the harm to the respondents will be slight if the Court grants the injunction and that in the alternative, if the Court orders the respondent to deposit the tax payments in an escrow account, the harm to the respondent will be even less.

The respondent argues that if *any* equitable relief is granted, the State will be greatly harmed because it will lose the benefit of the use of those funds whether the collection is enjoined or the tax is placed in an escrow account.

Based on the evidence presented at the injunction hearing, it appears that SHUF constitutes a very small percentage of the funds used by the State for the construction, repair, and maintenance of highways. For the fiscal year ended June 30, 1987, the SHUF totaled approximately $27 million. The respondent estimated that based on

---

**5.** IC 6–8.1–9–1 *et seq.*

**6.** The 1987 General Assembly has enacted IC 6–6–8–12 (West Supp.1987), which will become effective September 1, 1987. IC 6–6–8–12 provides:

(1) If the commissioner determines that a carrier has erroneously paid the fee imposed under this chapter and obtained an emblem, the carrier is entitled to a refund of the erroneously paid fee.

(b) To obtain a refund under this section, the carrier must file a written claim with the commissioner:

(1) within six (6) months after the expiration date of the emblem obtained;

(2) that states the reason a refund should be granted; and

(3) that includes an affirmation by the claimant.

This addition of this section further confuses the issue of whether petitioners have an adequate remedy at law since it is unclear how it relates to IC 6–8.1–9–1 or how it relates to the issue of sovereign immunity. Moreover, IC 6–6–8–12 contains language similar to the language used in the Vermont statute which was construed against the taxpayer in *American Trucking Associations v. Conway*, 508 A.2d at 414.

past figures, $2 to 3 million would be collected until the end of the SHUF year. The Court notes, however, that this figure should be even lower because the Indiana General Assembly has amended the SHUF statute. The amendment allows carriers to purchase a half-year permit and emblem, effective for a half year from October 1 through March 31 of the succeeding year, for a fee of only $25. IC 6–6–8–7(b), (c) (Supp.1987) (amending IC 6–6–8–7) (effective Sept. 1, 1987). This amendment would probably lower the estimated collections to $1.5 to 2 million. The taxes are distributed through the Motor Vehicle Highway Fund: 53% to the State Department of Highways; 32% to 92 counties; and 15% to cities and towns having highway departments.

The State's portion of this tax amounts to only $12–13 million a year; the State Department of Highway's annual budget for repair, construction, and maintenance amounts to $220–230 million. The amount going to the state which is sought to be enjoined by petitioners makes up only 53% of the $1.5 to 2 million collectible before April 1, 1988. The budgets of the counties, cities, and towns also dwarf the relative amount of tax sought to be enjoined. For the entire year, the SHUF tax constitutes an estimated 7.4% of the counties' budget and approximately 5.1% of the cities' and towns' budgets.

The Court is well aware of the scarcity of funds for highway repair and maintenance. In this sense, it comes as no surprise that the respondent's various witnesses testified that the loss of these funds would cause some harm. Loss of any funds will harm state and local governments. As testimony by a witness for the State Department of Highways indicated, the government also stands to lose some flexibility in the use of funds. But the fact remains that the amount of SHUF to be collected for the remainder of the taxable year is very small in comparison to the total revenues budgeted by the state and local governments. And with that it mind, the harm to the petitioners by denying equitable relief is not outweighed by the harm to the respondent if relief is granted.

C) PUBLIC INTEREST

The petitioners also argue that granting the injunction is in the public interest because public policy considerations do not favor the continuation of imposition of an unconstitutional tax. The respondent argues that the public interest will be harmed because if the state and local governments lose the use of the funds, the motoring public will be harmed by stoppages in road repair and maintenance projects.

As was discussed above, the funds to be enjoined or placed in escrow are miniscule in amount compared to the total revenues available for highway repair and maintenance. Therefore, it is ludicrous to suggest that the collective wheels of the motoring public will grind to a halt because the loss of funds renders the government unable to maintain its highways. At most, the motoring public will experience slight inconvenience.

The Court has made it clear to the parties that a decision on the merits will be made before the end of calendar year 1987. If the petitioner is successful on the merits, the Indiana General Assembly will have an opportunity before the end of the fiscal year to enact legislation providing for revenues to replace those lost; thus highway repair and construction programs currently relying on SHUF yet to be collected should not be appreciably hindered. Likewise, if the respondent should prevail on the merits, the SHUF funds placed in escrow will become available and the bulk of SHUF collected April 1, 1988, will be unaffected.

D) SECURITY

Petitioners maintain that whether the Court orders collection of the tax to be enjoined or, in the alternative, orders the establishment of an interest bearing escrow account, the respondent will not be harmed in case of a wrongful injunction because the time value of money can be recovered through the accrual of interest.

If the collection of tax is enjoined and the statute is subsequently upheld on constitutional grounds, the respondent would probably encounter great expense in any attempt to collect the tax. On the other hand, if the statute is upheld and the funds

have been deposited in an escrow account, the respondent will have immediate access to the money previously collected. Therefore, it would be appropriate to require only a nominal bond. *See International Controls Corp. v. Vesco* (2d Cir.1974), 490 F.2d 1334, 1356.

E) CONCLUSION

Taking all the factors into account, the Court finds that the petitioners are entitled to equitable relief. Because both parties are primarily concerned about the availability of funds once the case is decided on the merits, an order for the escrow account is in the best interests of both parties. *See, e.g., Huie v. Private Truck Council of America, Inc.* (1984), Ind., 466 N.E.2d 435.

Accordingly it is hereby ORDERED that

1. The petitioners shall file a bond or security in the amount of $1,000.00, after which;

2. (A) All respondents and all agents or other persons acting under respondents' direction, supervision, or control, are ordered to pay over to the escrow agent hereinafter named, for deposit into the escrow fund established hereunder all monies hereafter collected or received pursuant to IC 6–6–8–1 *et seq.* That at all times, such monies collected or received shall be handled in manner which allows them to be identified as escrow fund monies and at no time shall such monies become a part of or deposited into the motor vehicle highway account or otherwise become a part of or deposited into the state treasury. In collecting, receiving, or otherwise dealing with such monies, all respondents and all agents or other persons acting under such respondents direction, supervision, or control shall be deemed to be acting under the Court's jurisdiction for the purpose of this order. The express purpose of this order is to insure a refund mechanism if the Court finds that IC 6–6–8–1 *et seq.* is unconstitutional and the monies collected pursuant thereto were wrongfully or illegally charged and collected by respondents.[7]

(B) Respondent Marjorie H. O'Laughlin as Treasurer of the State of Indiana, is hereby appointed as Escrow Agent responsible for administering the escrow fund established hereunder.

(C) The Escrow Agent shall maintain adequate records which identify, by name, address, dates, and amounts of monies paid, all persons from whom monies have been received or collected for deposit in the escrow fund. The said Escrow Agent may receive assistance from other respondents as necessary to enable her to maintain the aforesaid records in a manner which least inconveniences the Escrow Agent. The records, however, shall be made available at Indianapolis, Indiana, to the petitioners or petitioners' attorney upon reasonable notice.

(D) The escrow agent shall invest all such escrow funds, and income accrued thereon, at commercially reasonable rates and in a commercially reasonable and prudent manner.

(E) All such monies and income earned thereon shall be held in escrow until further order of this Court.

3. The enforcement of IC 6–6–8–1 *et seq.* is in no way affected by this order.

4. A pleading entitled "Original Tax Appeal Petition" having been filed, the respondent is directed to respond thereto as provided by the rules of this Court.

5. That this cause may be decided on the merits at the earliest possible date, the parties shall each hereafter expedite this case in every way possible.

6. The petitioners, having filed their motion for certification of a class action, said motion is now set for hearing on Friday, August 21, 1987, at 10:30 A.M. in Room 413, State House, Indianapolis, Indiana. Pre-hearing briefs shall be exchanged and filed on or before August 18, 1987.

---

**7.** If the respondent can develop a procedure which will assure with no doubt or reservation a refund of SHUF collected *pendente lite* should IC 6–6–8–1 *et seq.* be found unconstitutional, the court, on motion and after hearing, will reconsider its order herein.