## Case No. 6,378.

### The HENRY MIDDLETON.

[Blatchf. Pr. Cas. 121.] [1]

District Court, S. D. New York. March, 1862.

PRIZE—VIOLATION OF BLOCKADE—CONDEMNATION.

1. Vessel and cargo condemned as enemy property, and for a violation of the blockade.

2. None of the officers or crew of the vessel were sent into this port with her, or produced with her to be examined as witnesses, but the master subsequently appeared and was examined in preparatorio.

In admiralty.

BETTS, District Judge. The prize in this instance was captured off the coast of South Carolina, August 21, 1861, by the United States ship Vandalia, and sent into this port, and here libelled September 5, 1861. No answer or claim has been interposed or prosecuted by any person. The vessel and cargo were owned in Charleston, and sailed thence for Liverpool between the 6th and 21st of August, 1861. The master of the vessel knew that the port was blockaded, and the fact was also published in the Charleston papers. The ship's documents were furnished her by the rebel government at Charleston, and she sailed under the rebel flag. When she was chased by the Vandalia, the master of the prize threw overboard the private letters of the shippers of the cargo he was carrying, and also his deck load, to avoid capture. Judgment of condemnation of the vessel and cargo is rendered, because the prize was at the time of capture enemy property (Jecker v. Montgomery, 18 How. [59 U. S.] 110), and also because she designedly evaded the blockade of Charleston harbor. In this case none of the officers or crew of the captured vessel were sent into this port with the prize, nor were they produced with her to be examined as witnesses. This irregularity is substantially cured by the subsequent appearance and examination in preparatorio of the master of the vessel; and, moreover, no one appears to contest the validity and regularity of the capture.

---

HENRY MORRISON, The (VAN WINKLE v.). See Case No. 16,882.

HENRY PRATT, The (BROWN v.). See Case No. 2,010.

---

## Case No. 6,379.

### The HENRY TROWBRIDGE.

[10 Ben. 415.] [2]

District Court, E. D. New York. April, 1879.

SUPPLIES TO A WHALER—LIEN—SPECIFICATION.

1. Casks, furnished to a whaler, to be stowed on board to receive the oil, are necessary for the vessel, and, by the law of the state of New York, a lien attaches to the vessel for the amount of the debt incurred therefor.

2. It is not necessary to file a specification of such lien, where the vessel has not left the state before her seizure under process issued to enforce such lien [The John Farron, Case No. 7,-341, followed].

In admiralty.

C. N. Judson, for libellant.
Beebe, Wilcox & Hobbs, for claimant.

BENEDICT, District Judge. The evidence shows a delivery to the bark Henry Trowbridge of certain casks and hoops intended for use on board the vessel during a whaling voyage for which she was then fitting.

Under the circumstances attending the transaction the libellant was entitled to payment upon delivery of the articles in accordance with the order. It cannot be held that the sale was upon the personal credit of the owners, nor was there any delay of payment agreed on such as would affect the libellant's lien or show an intention to waive the lien.

Upon the evidence, the articles furnished formed a necessary part of the equipment of the vessel. Casks stowed in a whaler to receive the oil obtained from whales captured are a necessity, and no whaler is sent to sea without them. Such articles are part of the equipment of such a vessel. The vessel was a domestic vessel of the state of New York, and by the law of that state a lien attached to her in favor of the libellant for the amount of his debt. This lien was subsisting at the time of the filing of the libel, inasmuch as the vessel did not depart from the state between the time of the delivery of the casks and her seizure under the process herein. Under such circumstances it was not necessary to file a specification of the lien.

The question in respect to the effect of the statute of the state and the necessity for filing specifications in such a case were passed on by the circuit court for the Southern district of New York in the case of The John Farron [Case No. 7,341]. The law of that case I have no desire to question or doubt, even if it were proper for me to do so. It furnishes the authority by which this case must be decided, and accordingly the libellant must have a decree for the amount of his bill, with interest and costs.

---

HENRY WOOD, The (HOWLAND v.). See Case No. 6,795.

---

## Case No. 6,380.

### HENRY v. CORNELIUS et ux.

[1 Cranch, C. C. 37.] [1]

Circuit Court, District of Columbia. July Term, 1801.

BAIL—FEME COVERT.

Bail cannot be required of a feme covert in a civil action.

---

[1] [Reported by Samuel Blatchford, Esq.]

[2] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

Actions on the case.

THE COURT decided that a feme covert could not be held to bail in a civil action.

## Case No. 6,381.

### HENRY v. CURRY.

[Abb. Adm. 433.] [1]

District Court, S. D. New York. Jan., 1849.

ADMIRALTY—LIBEL FOR WAGES—MISNOMER—CERTIFIED COPY OF SHIPPING ARTICLES.

1. In defence to a libel for wages as cook and steward by one William Henry, respondent put in shipping articles executed by William Henderson as cook and steward. *Held*, that the presumption was that the libellant was the person who had entered into the articles.

2. Maritime courts will not lay much stress on an objection of misnomer, unsupported by evidence that the party was in fact not known by the name ascribed to him.

3. It seems, that where original shipping articles are proved before a commissioner, and redelivered to the vessel, who thereupon pursues her voyage, a copy certified by the commissioner is competent evidence upon the hearing.

This was a libel in personam by William Henry against Frederick Curry, sued as Johnson, master of the bark Alpine, for wages.

Alanson Nash, for libellant.

Griffin & Laroque, for respondent.

BETTS, District Judge. The libellant alleges that he shipped on October 24, 1848, in the bark Alpine, as cook and steward, at $16 wages per month, to perform a voyage from Halifax, Nova Scotia, to Sydney and New York, where the voyage was to terminate; and that he performed his duty on board up to November 12th, when the vessel arrived at this port and the voyage ended. He claims $9 balance of wages due him. The answer asserts that the bark is a British vessel, and the libellant a British seaman; and that the voyage for which he engaged was from Halifax to various ports including New York, and to Europe, and back to British North America, for a period not exceeding one year. The original articles were produced on the preliminary hearing before the commissioner, and identified by the testimony of the chief mate. "William Henderson" is entered therein as cook and steward. The name is signed with a cross or mark. The handwriting of the witness to the execution of the articles by Henderson is proved, and that he resides in Nova Scotia. This action is in the name of "William Henry."

The sufficiency of this evidence is controverted by the libellant, on the ground that, as he is not proved to have been known on board by the name of Henderson, the presumption is that he came out as a substitute for Henderson, but never bound himself to

the engagement of Henderson by subscribing to the articles. The objection is also extended to the further suggestion, that even if proof of the handwriting of subscribing witness is ever adequate evidence of the execution of articles, it can be so only on the exhibit of the original articles to the court, in order to show that the whole transaction wears the appearance of genuineness and correctness. The libellant having brought suit for wages in the capacity of cook and steward, and having adopted the name of "William Henry," it is incumbent on him to prove that to be his true name; otherwise the inference will be, that he is the person who shipped and subscribed the articles in that capacity. The difference in surnames is not so great, but that a misconception in pronunciation might easily occur; and maritime courts are too familiar with the habit of sailors to assume a variety of names, to lay special stress on an objection of misnomer, unaccompanied with evidence on the part of the seaman that he did not use the name attached to the articles, and that he was known in the ship by a different one. No evidence is offered by the libellant that he is "William Henry" and not "William Henderson"; and since he assumes to himself the description of cook and steward, applied in the articles to "William Henderson," it must be presumed by the court that he is the person who entered into the contract. It is moreover to be observed, that the libellant is not very exact in his recollection and statement of names. He sues the master by the name of "Johnson," but gives no evidence that anybody on board did not perfectly well know that his name was "Curry." It so appeared upon the articles, and was proved to be his true name by the testimony of the chief mate.

The original articles, after having been examined and proved in presence of a commissioner, upon the hearing on return of the summons, were restored to the vessel, and had gone with her on her voyage. A copy certified by the commissioner is attached to the depositions. For the libellant, it is objected that such copy is incompetent evidence. The cause not depending upon the evidence furnished by the articles, I do not think it necessary to go into the discussion of that point; but my impression is, that the evidence should be regarded competent and sufficient, the authentication of the articles having been made in a judicial proceeding in the cause under the act of congress of July 20, 1790 [1 Stat. 131], before a magistrate authorized to conduct it. The chief mate testifies that the voyage was not to end at New York, but was to be continued from here to Ireland, and back to Halifax, and that the libellant shipped for the voyage. No evidence is furnished by the libellant showing the termination of the voyage at this port, or his discharge by the master. Upon the well-settled doctrine of admiralty