American Trucking Associations, Inc., Fort Edward Express Co., Inc., and J.A. Carman Trucking Co., Inc., Individually and On Behalf of All Others Similarly Situated v. William H. Conway, Jr., Vermont Commissioner of Motor Vehicles, Madeleine M. Kunin, Governor of the State of Vermont, Susan C. Crampton, Secretary of the Vermont Agency of Transportation, Charles A. Bristow, Vermont Commissioner of Public Safety, and Emory A. Hebard, Vermont State Treasurer, Each Individually and In Their Official Capacities

[566 A.2d 1323]

No. 87-300

Present: Allen, C.J., Peck and Gibson, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed August 25, 1989

*Ralph A. Foote* and *Robert H. Moyer* of *Conley & Foote,* Middlebury, *Daniel R. Barney* and *Robert Digges, Jr.,* ATA Litigation Center, and *William S. Busker,* Vice President,

Legal Affairs, American Trucking Associations, Inc. (Of Counsel), Alexandria, Virginia, for Plaintiffs-Appellees.

*Jeffrey L. Amestoy*, Attorney General, and *Thomas R. Viall*, Assistant Attorney General, Montpelier, for Defendants-Appellants.

**Gibson, J.** Defendants appeal from a decision of the Washington Superior Court declaring 23 V.S.A. § 417(a) unconstitutional and ordering defendants to refund to plaintiffs the taxes collected and reserved by them in a court-ordered escrow account. We affirm.

In the case before us, plaintiffs[1] challenge a reciprocal fee imposed on certain trucks registered in states other than Vermont. The provision at issue, 23 V.S.A. § 417, was first adopted in 1951, No. 210, § 3, and assessed a $3 fee on the entry into Vermont of trucks from states which imposed taxes on Vermont trucks in addition to fuel taxes. Section 417 was amended in 1961 and 1972 to raise the fee first to five, and then to ten, dollars. 1961, No. 286, § 3 and 1971, No. 226 (Adj. Sess.), § 3.

In 1981, the Legislature passed Act 87, which, inter alia, amended § 417 to require a $15 trip fee for each entry of a truck registered in another jurisdiction, plus a $10 entry fee for each entry of a truck registered in a state imposing "more than one tax, fee or toll" on vehicle usage within that state. 1981, No. 87, § 19, codified at 23 V.S.A. § 417(a). American Trucking Associations, together with two other named plaintiffs, immediately commenced a class action challenging the entry fees imposed by Act 87 on the ground that they discriminated against interstate commerce. After the superior court dismissed their complaint, this Court on appeal remanded the matter for further findings of fact. *American Trucking Associations, Inc. v. Conway*, 142 Vt. 17, 23, 451 A.2d 42, 45 (1982) (*American Trucking 1*).

---

[1] The members of the plaintiff class were defined by court order as "all interstate motor carriers primarily registered outside the State of Vermont and who have been or may be subject to payment of highway use permit fees" under 23 V.S.A. § 417.

On remand, the superior court concluded that the challenged entry fees were constitutional. On appeal, we reversed, concluding that "Act 87 on its face discriminates against interstate commerce and violates the Commerce Clause." *American Trucking Assns, Inc. v. Conway*, 146 Vt. 574, 577, 508 A.2d 405, 407 (1986), *cert. denied*, 483 U.S. 1020 (1987) (*American Trucking 2*).

While the appeal in *American Trucking 1* was pending, the Legislature again amended the fee system for foreign trucks, including § 417(a). 1981, No. 172 (Adj. Sess.). American Trucking Associations, joined by two other named plaintiffs, again initiated a class action which challenged the constitutionality of certain provisions of Act 172, codified at 23 V.S.A. §§ 415, 3007, and 3010. They did not challenge § 417(a) as amended. In *American Trucking Associations, Inc. v. Conway*, 146 Vt. 579, 586, 508 A.2d 408, 413 (1986), *cert. denied*, 483 U.S. 1019–20 (1987) (*American Trucking 3*), this Court struck down those three provisions as unconstitutional.

In both *American Trucking 2* and *American Trucking 3*, plaintiffs' claims for monetary relief were denied on the grounds that actions to recover moneys payable out of state funds are barred by the doctrine of sovereign immunity as a suit against the state. 146 Vt. at 579, 508 A.2d at 408, and 146 Vt. at 587–88, 508 A.2d at 413–14.

One month after we handed down our decisions in *American Trucking 2* and *American Trucking 3*, American Trucking Associations, together with two other named plaintiffs, commenced a third class action suit to challenge the constitutionality of 23 V.S.A. § 417(a) as amended by Act 172. Accompanying the original complaint was a motion for a preliminary injunction or for the escrowing of tax proceeds pending the resolution of the challenge. In April of 1986, the superior court granted the motion and ordered that the proceeds of the tax collected pursuant to § 417(a) be escrowed by the State Treasurer so that "at no time shall such monies become a part of or deposited in the State Treasury." Defendants filed a petition for extraordinary relief alleging that the superior court's escrow order was unlawful and contrary to the public interest; the petition was summarily denied by this Court in an unpublished order issued April 9, 1987.

In the meantime, the case was argued on the parties' competing motions for summary judgment in October of 1986. A memorandum of decision and order, issued May 4, 1987, concluded that 23 V.S.A. § 417(a) was unconstitutional, and on June 22, 1987 the superior court issued a judgment order permanently enjoining defendants from the continued collection of the § 417(a) taxes, denying plaintiffs' claim for taxes paid prior to the establishment of the escrow, and ordering that the proceeds in the escrow account plus accrued interest be refunded to the plaintiffs. Defendants appeal all these decisions, including the establishment of the escrow.

Defendants raise numerous arguments in support of their appeal: (1) that the instant litigation is barred by principles of issue and claim preclusion; (2) that 23 V.S.A. § 417(a) is constitutional under previous decisions of this Court; (3) that the escrow order is invalid as procedurally defective; (4) that the escrow order violates the doctrine of sovereign immunity; (5) that no refund should be allowed because any finding of unconstitutionality should be applied prospectively only; (6) that plaintiffs were unqualified to bring suit in Vermont as unregistered foreign corporations; and (7) that plaintiffs are precluded from any recovery on various equitable principles.

## I.

Defendants contend that plaintiffs are barred from litigating the validity of this tax by the doctrines of res judicata or collateral estoppel. We note that these doctrines involve separate and distinct concepts, although the umbrella term res judicata is often applied to the use of both theories of estoppel. For ease of discussion in this opinion, we will refer to the two doctrines by the more descriptive terms of claim preclusion and issue preclusion. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4402 (1981) (discussing res judicata in context of Federal Rules of Civil Procedure); Restatement (Second) of Judgments ch. 3, Introductory Note (1982). In essence, defendants argue that both issue and claim preclusion bar the instant litigation.

Defendants first contend that § 417(a) was declared constitutional in *American Trucking 2*, and that, therefore, the doctrine of issue preclusion renders this lawsuit repetitive and unnecessary: "This Court has already disposed of [plaintiffs']

challenge to the constitutionality of 23 V.S.A. § 417, albeit in its form adopted in 1981." The trial court rejected this contention, stating that "while the Court [in *American Trucking 2*] did not expressly single out section 417(a) as unconstitutional, it did clearly hold unconstitutional the scheme" of which that section was a part.

██ The doctrine of issue preclusion bars the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the same parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4416, at 137–38 (1981); see also *Berisha v. Hardy*, 144 Vt. 136, 138, 474 A.2d 90, 91 (1984) (collateral estoppel, which is more limited than res judicata, bars relitigation of issues "'necessarily and essentially determined'" in prior action) (quoting *Land Investment, Inc. v. Battleground Associates*, 138 Vt. 316, 326, 415 A.2d 753, 759 (1980)).

██ It is clear that what was at issue in *American Trucking 2* was not the same § 417(a) that is before us today. As we noted above, the § 417(a) struck down in *American Trucking 2* was that enacted into law by Act 87 in 1981. The current version of 23 V.S.A. § 417(a) derives from Act 172, passed into law in 1982. Although minimal, the changes between the two provisions are significant enough to render them outside the scope of issue preclusion's requirement of *identical* issues.[2] Thus, it was neither actually litigated nor decided, and no preclusive effect will attach to our decision as to § 417 in the

---

[2] Act 172, § 6 amended 23 V.S.A. § 417(a) as follows:
 If more than one tax, fee or toll is imposed upon vehicle usage in another state a ton-mile tax, or a tax requiring quarterly or monthly reporting is imposed on Vermont registered vehicles by another state in addition to that state's diesel fuel tax, then there shall be charged an additional $10.00 for each entry into this state of any truck registered in the state charging the additional tax, fee or toll.
 (Underlined text is new; deletions are struck out.)

prior litigation.[3] See *Berisha v. Hardy*, 144 Vt. at 138, 474 A.2d at 91.

■ Defendants also contend that because certain provisions of Act 172 were constitutionally challenged in *American Trucking 3*, plaintiffs' claim must be barred by the doctrine of claim preclusion. Under this theory of estoppel, parties are barred from litigating claims or causes of action which were or should have been raised in previous litigation, *Hill v. Grandey*, 132 Vt. 460, 463, 321 A.2d 28, 30 (1974), where the parties, subject matter and causes of action are identical or substantially identical. *Berisha v. Hardy*, 144 Vt. at 138, 474 A.2d at 91.

*American Trucking 3* involved a constitutional attack on three provisions of Act 172, codified at §§ 415, 3007 and 3010 of 23 V.S.A., under which trucks over 18,000 pounds operating on Vermont highways were required either to pay a $50 annual licensing fee, acquire a $50 "single trip permit," or acquire a $50 "temporary authorization." Plaintiffs challenged these "user fees" as unconstitutionally burdensome on interstate commerce. This Court upheld the challenge. 146 Vt. at 586, 508 A.2d at 413.

■ Although plaintiffs in *American Trucking 3* attacked three sections of Act 172, they did not challenge § 417(a) as amended by that same act. Our inquiry, then, is whether the two causes of action are so interrelated that plaintiffs ought to have raised both in that litigation. We conclude that they are not. This Court has previously characterized causes of action as the same for purposes of claim preclusion where "the same evidence will support the action in both instances." *Hill v. Grandey*, 132 Vt. at 463, 321 A.2d at 31. The tax challenged in *American Trucking 3* was a $50 annual user fee imposed on all trucks, which was effectively offset by a $50 registration fee reduction benefiting Vermont trucks only, thereby "shift[ing] the entire impact of the user fee legislation onto

---

[3] We also note that our reading of *American Trucking 2* is diametrically opposed to defendants', in that the issues litigated in that action—all provisions of Act 87, which included § 417's entry fee/surcharge requirements—were held unconstitutional. See 146 Vt. at 575, 508 A.2d at 405. Thus, we agree with the trial court that if any preclusive effect is given to that litigation, it would inure to plaintiffs' benefit.

foreign operators" and resulting in unconstitutional discrimination on its face. 146 Vt. at 584, 508 A.2d at 412. The provision being challenged today involves a wholly separate scheme of taxation having an impact only on trucks from the nine states imposing "third-tier"[4] taxes on foreign-registered trucks. The evidence needed to support this challenge is sufficiently different from that involved in the user-fee challenge of *American Trucking 3* that we cannot say the two causes of action are identical for claim preclusion purposes.

Even were we to hold otherwise, we would agree with the trial court's conclusion that "[t]o allow a potentially unconstitutional statute to stay in effect because of an error in judgment would needlessly exalt form over substance." We do not think this would serve either the parties subjected to an unconstitutional tax, or the general doctrine of res judicata— a judicially created rule of law—which seeks to keep court dockets clear of unnecessary litigation, while offering litigants reliance on final judgments as well as repose from continuous litigation arising out of the same occurrence or set of facts. See generally Wright, Miller & Cooper, *supra*, § 4403; *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

## II.

Defendants next contend that 23 V.S.A. § 417(a) is permissible under previous opinions of this Court as a retaliatory or reciprocal tax complementary to those taxes imposed on Vermont-registered trucks by jurisdictions requiring the payment of third-tier taxes for Vermont trucks using their highways. Defendants argue that *American Trucking 3* held certain user fees unconstitutional because they were not complementary to fees imposed on Vermont trucks, and that the taxes challenged in *American Trucking 2* were similarly unconstitutional because they were not complementary to the sales and use taxes and the registration fees imposed on Vermont trucks.

In essence, defendants base their premise of statutory constitutionality on the fact that the tax imposed by § 417(a) is directed only at trucks whose home jurisdictions impose

---

[4] Third-tier taxes, also called third-structure taxes, are those other than registration fees or motor fuel taxes.

third-tier taxes on Vermont trucks: because these taxes are "complementary," they contend, they are constitutional under both *American Trucking 2* and *American Trucking 3*. This argument virtually ignores the constitutional analysis applied by this Court in both those cases.

In considering the constitutionality of taxes affecting interstate commerce, this Court must ascertain, inter alia, whether the challenged tax improperly discriminates against such commerce. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 287 (1977); see *American Trucking 3*, 146 Vt. at 583–84, 508 A.2d at 411. It is by now axiomatic that a state tax is not invalid per se because it burdens interstate commerce. *Maryland v. Louisiana*, 451 U.S. 725, 754 (1981). Nevertheless, a state tax which discriminates against interstate commerce by providing a direct commercial advantage to local businesses is unconstitutional. *Id.; American Trucking 3*, 146 Vt. at 584, 508 A.2d at 412.

Section 417(a) imposes a trip tax on certain trucks entering Vermont:

> If a ton-mile tax, or a tax requiring quarterly or monthly reporting is imposed on Vermont registered vehicles by another state in addition to that state's diesel fuel tax, then there shall be charged an additional $10.00 for each entry into this state of any truck registered in the state charging the additional tax, fee or toll.

23 V.S.A. § 417(a). The impact of the tax is limited to only those trucks, registered in any of nine states which currently impose such third-tier taxes on foreign trucks, that enter this state in the course of interstate commerce. No Vermont trucks are affected.

It is clear that this tax facially discriminates against trucks from those nine states. Defendants argue that this discrimination is nullified by the fact that those states would exact a similar tax from Vermont trucks using their highways. But we do not agree that the retaliatory nature of the tax imposed by § 417(a) negates the facial discrimination.

A similar argument was made before the Maine Supreme Court in the recent case of *Private Truck Council of America, Inc. v. Secretary of State*, 503 A.2d 214 (Me.), *cert. denied*, 476 U.S. 1129 (1986). The Maine statute challenged in that case

was essentially identical to that at issue here. As the Maine court stated, the law "had as its candid purpose coercive retaliation to force the . . . 'offending' states to drop the extra tax burdens they impose on Maine trucks." *Id.* at 218. That solution was rejected in no uncertain terms:

> To the extent, if any, that the . . . states whose vehicles are currently subject to Maine's reciprocal truck tax are themselves unconstitutionally burdening interstate commerce with their third structure taxes, "the Commerce Clause itself creates the necessary reciprocity: [Maine and its truckers] may pursue their constitutional remedy by suit in state or federal court challenging [those . . . states'] actions as violative of the Commerce Clause," instead of enacting retaliatory taxes.

*Id.* (quoting *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366, 380 (1976)). The court concluded that "[a] state may not violate the Commerce Clause in an attempt through self-help to coerce another state into desisting from a Commerce Clause violation." *Id.*; see also *Department of Revenue v. Private Truck Council of America, Inc.*, 531 So. 2d 367, 369 (Fla. Dist. Ct. App. 1988) ("[d]iscrimination cannot be corrected by retaliation"); *Private Truck Council of America, Inc. v. State*, 128 N.H. 466, 472, 517 A.2d 1150, 1154 (1986) (same; "'to prevent this was one of the chief ends sought to be accomplished by the adoption of the Constitution'") (quoting *Travis v. Yale & Towne Mfg. Co.*, 252 U.S. 60, 82 (1920)).

█ Defendants' arguments that the § 417(a) tax is valid as a "complementary" or "compensatory" tax are inapposite. The doctrine of compensatory taxes is a narrow exception to the Commerce Clause's prohibition of state taxes that discriminate against interstate commerce. If a state has enacted a tax solely on an in-state activity, the doctrine allows it to compensate for that tax by enacting an identical tax on the interstate equivalent of the in-state activity. See *Alaska v. Arctic Maid*, 366 U.S. 199, 204–05 (1961). "'The common thread running through the cases upholding compensatory taxes is the equality of treatment between local and interstate commerce.'" *State v. Private Truck Council of America, Inc.*, 258 Ga. 531, 533, 371 S.E.2d 378, 380 (1988) (quoting *Maryland v. Louisiana*, 451 U.S. at 759). In order to fall within the

compensatory-tax doctrine, there must be equality of treatment *by Vermont* with respect to domestic and foreign-registered trucks under its truck taxation scheme. Defendants have not brought any such provisions to our attention.

■ Because the tax discriminates against out-of-state trucks on its face, we hold that 23 V.S.A. § 417(a) must fall as offensive to the Commerce Clause. See *Private Truck Council v. Secretary of State,* 503 A.2d at 218.

### III.

Defendants contend that the escrow order issued by the superior court is invalid because it does not comply with the specificity requirements of V.R.C.P. 65(d). That rule mandates that every restraining order and order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail ... the act or acts sought to be restrained." Relying on *Division of State Buildings v. Town of Castleton Board of Adjustment,* 138 Vt. 250, 257, 415 A.2d 188, 193 (1980), defendants contend that because the escrow order did not specify the factual findings upon which it was based, the order is invalid because no effective appellate review may be had.

■ Defendants contend that in requiring "reasons" for the issuance of an injunction to be specified, Rule 65(d) actually mandates an exposition of the court's findings and conclusions. We disagree. If the rule required findings, it could have said so. Instead, "[t]hese prerequisites are designed to protect those who are enjoined by informing them of what they are called upon to do or refrain from doing in order to comply with the injunction or restraining order," so that the orders will not be so vague that affected persons will be at a loss to determine the scope of the restraint. 11 C. Wright & A. Miller, Federal Practice and Procedure § 2955, at 536 (1973) (commenting on Fed. R. Civ. P. 65(d)); see also *Division of State Buildings,* 138 Vt. at 257, 415 A.2d at 193 ("to protect against judicial excess, [Rule] 65(d) requires the court to specify ... the reasons for issuance and the acts restrained"). Here, the order specifies its terms in reasonable detail, and the court set forth as its reason for issuing the order that "the express purpose of this provision ... is to ensure a refund mechanism if the [c]ourt finds that

such monies were wrongfully or illegally charged and collected" by defendants. The order as written complies with the requirements of V.R.C.P. 65(d).

We note that V.R.C.P. 52(a) provides that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions" except as provided in Rule 41(b), regarding the involuntary dismissal of an action. It should also be noted that under V.R.C.P. 52(a), all parties had the right to request written findings and conclusions within five days after notice of the decision.[5] Defendants failed to do so, and cannot now seek relief from this Court because no findings and conclusions are set forth in the order appealed from.

## IV.

Relying on *American Trucking 3*, defendants next claim that the escrow order is invalid because it violates the doctrine of sovereign immunity. That case involved a challenge to fuel-user license fees under 23 V.S.A. §§ 415, 3007 and 3010. The trial court had found the statutes unconstitutional, but had denied plaintiffs' motion for a refund of the funds collected by the state pursuant to those provisions. In discussing the latter issue, we stated that

> suits challenging the constitutionality of a state statute or its enforcement are not considered suits against the state for purposes of sovereign immunity. But an action to recover money which would be payable from state funds may be barred as a suit against the state.

146 Vt. at 587, 508 A.2d at 413–14 (citations omitted). We concluded that plaintiffs' claim for a refund of taxes already collected by the state was barred by sovereign immunity.

---

[5] Rule 52(a) states in part that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall, *upon request of a party* participating in the trial made on the record or in writing *within 5 days after notice of the decision*, or may upon its own initiative, find the facts specially and state separately its conclusions of law thereon ... ; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action" (emphasis added).

Defendants claim that the facts of this case fall squarely within the prohibition of *American Trucking 3*, since the escrow order was merely a fiction intended to circumvent the doctrine of sovereign immunity. We do not agree.

■ The doctrine of sovereign immunity precludes the maintenance of actions for the recovery of money against the state, unless the state has consented to be sued. See, e.g., *American Trucking 3*, 146 Vt. at 587–88, 508 A.2d at 414. Defendants here contend that no such consent has been given.

■ But this is not a suit for money damages against the state. As the Tenth Circuit Court of Appeals stated in a similar challenge to the recovery of escrowed sums, immunity is not applicable in such cases because "[t]he state has not received, and will never receive, the money." *Gallagher v. Evans*, 536 F.2d 899, 901 (10th Cir. 1976).

Defendants have attacked the validity and maintenance of the escrow account in this case on various technical grounds, as discussed below. Here, they challenge it on philosophical grounds: an escrow account should not be used to avoid the application of the doctrine of sovereign immunity. We agree that that is the result of the escrow in this case, but do not conclude that the use of an equitable remedy such as an escrow is therefore invalid.

A number of courts have used escrow accounts when faced with constitutional attacks on the validity of taxing statutes. In fact, United States Supreme Court Justice Blackmun, in his role as Circuit Justice, recently ordered the establishment of an escrow in *American Trucking Associations, Inc. v. Gray*, 483 U.S. 1306 (1987), involving a challenge to Arkansas's truck taxes. Analyzing the request for an escrow along the traditional lines of an injunction, he concluded that equitable principles favored the establishment of the account. *Id.* at 1310. In so doing, Justice Blackmun cited our decision in *American Trucking 3*, noting that plaintiffs faced irreparable injury because, absent injunctive relief, there was "a risk that, like other state courts, the Arkansas courts would deny restitution of taxes found to have been unconstitutionally collected." *Id.* at 1309. See also *Private Truck Council of America, Inc. v. Secretary of State*, 503 A.2d at 219–20 (establishing escrow);

*Private Truck Council of America, Inc. v. New Hampshire,* 128
N.H. at 473, 517 A.2d at 1155 (same).

■ Defendants also argue that the escrow order interferes
with the express intent of 32 V.S.A. § 502, which provides that
"[t]he gross amount of money received [by members of the
executive branch] *in their official capacities* ... shall be paid
forthwith into the state treasury" (emphasis added). We do not
see the escrow order as placing defendants in conflict with
their official duties under § 502. Any taxes collected by them
under the escrow order were not "in their official capacities."
As the trial court pointed out, it is inconceivable that a statute
designed to prohibit an unlawful diversion of state funds
should be interpreted to restrict the court's judicial preroga-
tives in the exercise of its equitable powers.

## V.

Defendants next argue that refunding the taxes in the
escrow account is not the proper remedy, given the power of
the court to fashion prospective-only relief, particularly in the
exercise of equity jurisdiction. See *Great Northern Ry. v.
Sunburst Oil & Refining Co.,* 287 U.S. 358, 364–66 (1932). We
begin our analysis of this argument by noting that the
prospectivity doctrine is an exception to the general rule that
judicial decisions are applied retroactively. See *St. Francis
College v. Al-Khazraji,* 481 U.S. 604, 608 (1987); see also
*United States v. Schooner Peggy,* 5 U.S. (1 Cranch 37) 103
(1801). We further note that even where relief is specifically
held to be prospective only, courts generally make an
exception for the case in which the new rule of law is being
enunciated. See, e.g., *Richard v. Richard,* 131 Vt. 98, 106, 300
A.2d 637, 641 (1973) (effect of decision "is applicable only to
the instant case, and other actions that may be brought in the
future, and is not to be applied retroactively"); see also
*Bergman v. Henry,* 115 Idaho 259, 262, 766 P.2d 729, 732
(1988) (ruling "shall apply prospectively, that is, only to this
case and other causes of action" arising after a stated date).
What defendants are requesting here is an even more
restrictive application of the doctrine of prospectivity: that our
decision today be applied only to future cases, thus disallowing
any financial recovery to plaintiffs herein.

■ Whether to fashion a remedy in a particular case so that it applies prospectively only is a decision within the discretion of the trial court. The United States Supreme Court emphasized this in its decision in *Lemon v. Kurtzman*, 411 U.S. 192 (1973), in which defendants were claiming that the rule of law set forth in an earlier lawsuit between the parties (*Lemon v. Kurtzman*, 403 U.S. 602 (1971)) should be given prospective application only. The Court, relying on *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 15, 27 n.10 (1971), noted that "[i]n shaping equity decrees, the trial court is vested with broad discretionary power; appellate review is correspondingly narrow." 411 U.S. at 200. Moreover, "equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Id.* (footnote omitted).

In the case of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07 (1971), the United States Supreme Court articulated a standard against which to measure the need for applying a decision prospectively instead of retroactively. This Court adopted a similar standard in *Solomon v. Atlantis Development, Inc.*, 145 Vt. 70, 74, 483 A.2d 253, 256 (1984): relief will be nonretroactive only where the case establishes a new rule of law (either by overruling clear past precedent or by deciding a matter of first impression in a manner "not clearly foreshadowed"), and where its retroactive application would be inequitable. Defendants argue that this case falls within the precepts of *Solomon* and, thus, should be applied prospectively only. We disagree.

First, we do not see this case as establishing a new rule of law. Our decision in *American Trucking 2* struck down a retaliatory tax almost identical to that challenged today, and for the same reasons: it facially discriminated against out-of-state truckers, and no Vermont tax imposed on domestic trucks offset that discrimination. 146 Vt. at 577, 508 A.2d at 407.

Second, we conclude that the retroactive application of our decision, so that a refund of the escrow proceeds is an appropriate remedy, works no inequity on defendants. Because the escrow was established, the funds collected pursuant to the unconstitutional taxing provision were never available to the state for use, thus obviating any reliance argument. Compare *Salorio v. Glaser*, 93 N.J. 447, 465, 461 A.2d 1100, 1109–10,

*cert. denied,* 464 U.S. 993 (1983) (state's reliance on income from Emergency Transportation Tax—millions of dollars had already been collected *and spent,* so that "public fiscal stability" was at issue—was a factor in deciding that tax was unconstitutional prospectively only).

 Even were we to conclude that this case falls squarely within the standards of *Chevron Oil* and *Solomon,* we reiterate that the decision to apply a new rule of law prospectively only is within the trial court's discretion. *Lemon v. Kurtzman,* 411 U.S. at 200. Here, the court refused to do so, and instead ordered that the funds collected in the escrow account be disbursed to plaintiffs. Defendants thus bear the burden of demonstrating that the trial court either abused its discretion or withheld it entirely. See, e.g., *Ohland v. Ohland,* 141 Vt. 34, 39, 442 A.2d 1306, 1309 (1982). They have failed to do so. Either way, their argument that today's decision must be applied prospectively is rejected.

## VI.

Defendants next claim that plaintiffs were not qualified to bring suit in Vermont because they are foreign corporations which have not filed certificates of authority in compliance with 11 V.S.A. § 2101.[6] They argue that only foreign corporations with such certificates are entitled to enjoy the same rights and privileges as domestic corporations, 11 V.S.A. § 2102, including the right to sue. 11 V.S.A. § 1852(2).

Prior to the adoption of 11 V.S.A. §§ 1852 and 2101 in 1970, this Court held on several occasions that foreign corporations were entitled, under the principles of comity, to access to the courts of Vermont "unless expressly forbidden." *New England Road Machinery Co. v. Calkins,* 121 Vt. 118, 123, 149 A.2d 734, 738 (1959); *Holbrook Grocery Co. v. Commissioner of Taxes,* 115 Vt. 275, 278, 57 A.2d 118, 120 (1948); *Siwooganock Guaranty Savings Bank v. Cushman,* 109 Vt. 221, 247, 195 A. 260, 272 (1937). Defendants argue that such access is now "expressly forbidden" by §§ 2101 and 1852. We disagree.

---

[6] 11 V.S.A. § 2101(a) provides in part that "[n]o foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority so to do from the secretary of state."

11 V.S.A. § 2101 requires foreign corporations "doing business" in Vermont to obtain certificates of authority, and § 2102 states that foreign corporations with such certificates have the same rights and privileges as domestic corporations. Thus, defendants ask us to infer that foreign corporations without certificates are prohibited access to our courts, since the ability to sue is one of the domestic corporation's powers enumerated in 11 V.S.A. § 1852. This inference does not rise to the level of an "express" prohibition.

Instead, the express statutory provision regarding a foreign corporation's ability to maintain a lawsuit is found in 11 V.S.A. § 2120, which provides that "[a] foreign corporation shall not maintain an action in this state *upon a contract made by it in this state* if, at the time of making such contract, it was doing business in this state without lawful authority" (emphasis added). The claims raised by plaintiffs in this action are constitutional, not contractual, and are not barred by 11 V.S.A. § 2120.

## VII.

Finally, defendants have raised several defenses of an equitable nature which, they contend, require our reversal of the trial court's decision.

First, defendants argue that plaintiffs have benefited from the fees collected pursuant to 23 V.S.A. § 417(a), which (but for the escrow order) were to be used for the construction and maintenance of state and local highways, as those roads are "the very lifeblood of their interstate truck shipping businesses." We disagree.

The cases offered in support of defendants' position are readily distinguishable. *Brattleboro Retreat v. Town of Brattleboro*, 106 Vt. 228, 173 A. 209 (1934), did not involve the application of an unconstitutional tax. Rather, that case held that the Retreat was liable to pay taxes on its income in excess of the $10,000 outlined in its original charter, as required by a legislative act in 1858, since it accepted "the provisions [of that act] beneficial to it." *Id.* at 237–39, 173 A. at 213.

Neither did *State v. Malmquist*, 114 Vt. 96, 40 A.2d 534 (1944), involve an unconstitutional taxing provision. Instead, defendant there contested the validity of an act passed in 1797

giving his predecessors in title the right to build a dam, because it was then to his advantage to lower the water in the lake to its pre-dammed level. This Court rejected his argument, stating that "[o]ne who has accepted the benefits bestowed by a statute, or who has acquired rights of property necessarily based upon it, may not thereafter attack that statute as unconstitutional." *Id.* at 103, 40 A.2d at 539. Similarly, in *Law's Administrator v. Culver*, 121 Vt. 285, 290, 155 A.2d 855, 858 (1959), we rejected plaintiff's claims that the Vermont statute under which he successfully effected service on a nonresident defendant was unconstitutional.

These cases all involved claims of unconstitutionality made by parties who had obtained substantive benefits under specific statutes. By contrast, 23 V.S.A. § 417(a) does not confer any personal substantive benefit on plaintiffs here. As the trial court stated, "[i]t is a tax, pure and simple." Since all citizens arguably benefit from a state tax, under defendants' argument no challenge to a tax law could ever be made. This position is meritless.

Next, defendants argue that because plaintiffs either did, or were able to, pass the cost of the tax through to their customers, any refund would constitute a windfall unjustly enriching them. We are not persuaded that this possibility, totally unsupported by any evidentiary showing on defendants' part, constitutes an inequity sufficient to support a finding of unjust enrichment. See *Center v. Mad River Corp.*, 151 Vt. 408, 412–13, 561 A.2d 90, 93–94 (1989) (plaintiff must prove inequity in order to recover damages under quasi-contract or unjust enrichment theory). Rather, we conclude that the inequity, if any, would lie in allowing defendants to retain the proceeds of an unconstitutional tax, where those monies were never made part of the state treasury nor, as a consequence, relied upon.

Last, defendants claim that because plaintiffs did not challenge the provision of § 417 until thirty years after this reciprocal truck tax was first created, they should now be precluded from asserting its unconstitutionality under the doctrine of laches. The equitable doctrine of laches is applied to prohibit the maintenance of actions where the party

requesting relief has failed to assert his right for an unreasonable and unexplained period of time and where the delay has been prejudicial to the defending party. *Stamato v. Quazzo,* 139 Vt. 155, 157, 423 A.2d 1201, 1203 (1980).

Defendants have made no showing of prejudice of such substance warranting it inequitable for us to uphold plaintiffs' constitutional challenge to the tax statute at issue. Their claims of prejudice are centered on the contention that because the state has successfully collected taxes under various incarnations of § 417(a) for over thirty years, it ought not to lose this revenue now merely because the law is unconstitutional.

We query whether the doctrine of laches can ever be used to preclude a constitutional challenge of a taxing statute. It would be the epitome of inequity to allow an unconstitutional law to remain in effect merely because, in the traditional terms of equitable jurisprudence, someone "slumbered on his rights." We will not countenance such a result here. In any event, laches is primarily a matter of discretion on the part of the trial court, whose decision will not be disturbed unless clearly shown to be wrong. *Id.* at 157, 423 A.2d at 1203. Defendants have not met this burden.

*Affirmed.*