# American Trucking Associations, Inc., Chemical Leaman Tank Lines, Inc., and Anderson Trucking Service, Inc., Individually and On Behalf of All Others Similarly Situated v. William H. Conway, Jr., Vermont Commissioner of Motor Vehicles, Madeleine M. Kunin, Governor of the State of Vermont, Susan C. Crampton, Secretary of the Vermont Agency of Transportation, A. James Walton, Jr., Vermont Commissioner of Public Safety, and Emory A. Hebard, Vermont State Treasurer, Each Individually and In Their Official Capacities

[566 A.2d 1335]

No. 88-156

Present: Allen, C.J., Peck and Gibson, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed August 25, 1989

*Ralph A. Foote* and *Robert H. Moyer* of *Conley & Foote*, Middlebury, *Daniel R. Barney* and *Robert Digges, Jr.*, ATA Litigation Center, and *William S. Busker*, Vice President, Legal Affairs, American Trucking Associations, Inc. (Of Counsel), Alexandria, Virginia, for Plaintiffs-Appellees.

*Jeffrey L. Amestoy*, Attorney General, and *Thomas R. Viall*, Assistant Attorney General, Montpelier, for Defendants-Appellants.

**Gibson, J.** Defendants appeal from a decision of the Washington Superior Court ordering a refund to plaintiffs of taxes paid under 23 V.S.A. §§ 415, 3007 and 3010 and held pursuant to an earlier order of the court in an escrow account since April 21, 1986. At stake is a sum of almost $8 million, plus accrued interest of another million dollars. We affirm.

The history of the prior litigation between these parties is set forth in our opinion in *American Trucking Associations, Inc. v. Conway*, 152 Vt. 363, 566 A.2d 1323 (1989) (*American Trucking 4*),[1] so we need not repeat it at length here. In brief, in our opinion in *American Trucking Associations, Inc. v. Conway*, 146 Vt. 579, 586, 508 A.2d 408, 413 (1986) (*American Trucking 3*), this Court struck down as unconstitutional a $50 fuel-user license fee (also called a "decal tax") imposed by 23 V.S.A. §§ 415, 3007 and 3010 as amended by 1981, No. 172 (Adj. Sess.). We did so on the ground that the fee facially discriminated against non-Vermont truckers because Act 172 simultaneously reduced registration fees for Vermont trucks by $50. 146 Vt. at 584, 508 A.2d at 412. We did not reach the second ground relied on by the trial court in its conclusion that the fee was unconstitutional: the tax's actual discriminatory

---

[1] This is the fifth appeal entitled *American Trucking Associations, Inc. v. Conway* to reach this Court. For ease of reference, we adopt the numbering system given these cases in the companion case issued today, which becomes *American Trucking 4*. See *American Trucking Associations, Inc. v. Conway*, 152 Vt. 363, 367, 566 A.2d 1323, 1326 (1989).

effect on non-Vermont trucks when calculated on a cost-per-mile basis.

Immediately after that decision, which was issued on February 21, 1986, the Legislature reenacted the decal-tax provisions to eliminate the offsetting reductions in Vermont truck registration fees. 1985, No. 124 (Adj. Sess.). Act 124 did nothing, however, to change the discriminatory effect of the decal tax when calculated on a cost-per-mile basis.

Act 124 was approved on April 18, 1986, with retroactive effect to March 3, 1986. Three days later, American Trucking Associations and two other named plaintiffs commenced an action challenging 23 V.S.A. §§ 415, 3007 and 3010 as amended by Act 124. Plaintiffs moved simultaneously in an ex parte proceeding for a temporary injunction to escrow the proceeds of the decal tax as reenacted; the motion was granted that same day. After briefing and a hearing, the superior court on May 29, 1986 issued a preliminary injunction continuing the escrow until further order.

The parties then requested various forms of relief: defendants moved to dismiss the action and for summary judgment, while plaintiffs moved to certify the case as a class action and also moved for summary judgment. All motions were considered together, and on May 5, 1987 the court issued a memorandum of decision, certifying the class action under V.R.C.P. 23(b)(1) and 23(b)(2), but denying the motions to dismiss and for summary judgment.

In June of 1987, the United States Supreme Court handed down its opinion in *American Trucking Associations, Inc. v. Scheiner*, 483 U.S. 266 (1987), declaring flat highway user taxes inherently discriminatory against interstate commerce. The decision specifically referred to Vermont's decal tax as an example of such taxes, which "divide and disrupt the market for interstate transportation services." *Id.* at 285, 285 n.17. Relying on *Scheiner*, plaintiffs renewed their motion for summary judgment and defendants filed a statement conceding the unconstitutionality of 23 V.S.A. §§ 415, 3007 and 3010 in light of that decision. The trial court issued a preliminary injunction prohibiting the collection of the decal tax on September 30, 1987.

Defendants continued, however, to oppose plaintiffs' request that the proceeds of the unconstitutional tax be refunded. After a hearing, the superior court issued an opinion and order on February 11, 1988 holding that the plaintiffs were entitled to a refund of all taxes paid into the escrow fund plus accrued interest. Defendants have appealed all actions by the superior court with respect to the establishment and maintenance of the escrow fund, as well as the court's decision that the amounts in escrow must be refunded to the plaintiffs.

## I.

Defendants first attack the validity of the escrow order of April 21, 1986. They do so on two grounds: first, that it violates the doctrine of separation of powers under both the Vermont Constitution and the United States Constitution; and second, that it violates Vermont law and constitutes an impermissible "end run" around Vermont's sovereign immunity.

Defendants concede that they failed to raise the separation of powers argument before the trial court, but contend that this Court should nevertheless consider the issue. The crux of their separation of powers argument is that under §§ 5 and 54 of chapter II of the Vermont Constitution, the escrow order's appointment of the State Treasurer as escrow agent renders him an officer of the court, thereby creating an unacceptable conflict with his duties as a member of the executive branch of government. Defendants invoke the United States Constitution's doctrine of separation of powers by analogy.

Because issues not raised before the trial court are waived on appeal, *Persons v. Lehoe*, 150 Vt. 582, 584–85, 554 A.2d 681, 682 (1988), our analysis of this claim could end here. We note, however, that even were we to consider this contention, it has no merit. The escrow order appointed defendant Emory A. Hebard, State Treasurer, as escrow agent, whose duties were to collect the taxes, segregate them into a separate account which "at no time shall ... become a part of or deposited in the State Treasury," and maintain adequate records as to who had paid the taxes. In administering the escrow account, the court declared that all defendants "shall

be deemed to be acting pursuant to this order and under the court's jurisdiction."

■ We perceive nothing "judicial" in the State Treasurer's duties under the escrow order that would, or could, conflict with his normal duties as Treasurer. Instead, his obligations as escrow agent are purely ministerial. To argue that because defendants were under the trial court's jurisdiction, they (and specifically Mr. Hebard) became "judicial officers" is without merit.

■ ■ Defendants next argue that the escrow order conflicts with 32 V.S.A. § 502(a) by compelling the State Treasurer to violate his duty to deposit monies collected by the state "without any deduction on account of ... [any] claim or demand of any description whatsoever." We rejected an identical claim in *American Trucking 4*, and adopt that same reasoning here. Similarly, we reject defendants' arguments as to the impermissibility of the escrow order in light of the doctrine of sovereign immunity. *American Trucking 4*, 152 Vt. at 376–77, 566 A.2d at 1331–32.

## II.

Defendants next challenge the trial court's escrow order as not within the standards for equitable relief. The trial court found there to be both the likelihood of success on the merits, and the possibility of irreparable harm should the state be allowed to collect and deposit the disputed taxes during the pendency of the litigation. Defendants contend that these conclusions were erroneous.

In *American Trucking Associations, Inc. v. Conway*, 142 Vt. 17, 451 A.2d 42 (1982) (*American Trucking 1*), which challenged the validity of certain retaliatory taxes levied on foreign trucks, one of the two issues before the trial court had been whether the fees imposed on those trucks were disproportionate to those collected from Vermont truckers. *Id.* at 20, 451 A.2d at 44. In remanding to the court for further findings, we held that "[o]nly by comparing the cost per mile imposed by the fee systems on foreign as opposed to Vermont trucks can this Court assess whether the systems were actually discriminatory." *Id.* at 22, 451 A.2d at 45. Although in the succeeding appeal of that case we based our conclusion of

unconstitutionality on the statute's facial discrimination, *American Trucking Assns. Inc., v. Conway*, 146 Vt. 574, 577, 508 A.2d 405, 407 (1986) (*American Trucking 2*), this statement nevertheless serves as a direct warning that actual discriminatory effect—as opposed to facial discrimination evidenced by the words of the statute alone—could serve to render a tax invalid.

■ Here, the Legislature's reenactment of the decal tax, which removed the provisions rendering it facially discriminatory, did not take into account the possibility that actual discrimination would still result from its imposition. In its escrow order, the trial court extensively analyzed the effect of the $50 decal fee at issue here, finding that under that scheme foreign trucks pay a much higher cost per mile traveled in Vermont than do domestic trucks. Applying *American Trucking 1*, the trial court concluded that this actual discriminatory effect would, in all likelihood, render 23 V.S.A. §§ 415, 3007 and 3010 invalid on the merits. As this conclusion is supported by the unchallenged findings of fact, we will not disturb it on appeal. *Community Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt. 152, 159, 559 A.2d 1068, 1072 (1989); *Dartmouth Savings Bank v. F.O.S. Associates*, 145 Vt. 62, 66, 486 A.2d 623, 625 (1984).

■ The State also claims that no irreparable harm threatens plaintiffs should the taxes be collected and deposited into the state treasury, while at the same time arguing vociferously that monies collected by the state cannot be recovered because of the doctrine of sovereign immunity. *American Trucking 3*, 146 Vt. at 587–88, 508 A.2d at 414. The logic of this circuitous reasoning eludes us. In fact, the trial court characterized the argument as follows: "The real thrust of the defendants' position is that the state should be allowed to collect and spend plaintiffs' taxes—regardless of how constitutionally flawed the tax law—because Vermont needs the money." Absent the escrow, plaintiffs faced a total forfeiture of all tax payments, which eventually came to almost $8 million. There is ample support for the trial court's conclusion that plaintiffs made a showing of potential irreparable harm, especially in light of its conclusion that plaintiffs were likely to succeed on the merits.

## III.

█ █ Defendants raise two arguments also proffered in *American Trucking 4*: that the named plaintiffs were not qualified to bring suit in Vermont, and that plaintiffs as a class cannot maintain an action for the recovery of fees because they have benefited from the expenditure of the fees on highway maintenance and construction. We reject both arguments here for the same reasons we did in that case. See *American Trucking 4*, 152 Vt. at 379-80, 566 A.2d at 1333-34.

## IV.

Defendants next contend that class action status should be reversed and refunds made only to the named plaintiffs on the ground that the superior court failed to comply with V.R.C.P. 23(c)(2)'s requirement that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Defendants argue that because actual notice to all persons who have paid the challenged taxes could have been made, the trial court's decision ordering notice by publication was constitutionally inadequate.

█ This argument is without merit. Rule 23(c)(2)'s notice requirements apply only to class actions maintained under V.R.C.P. 23(b)(3), where questions of law or fact common to class members "predominate" over questions affecting individual members, and the class action is determined to be "superior to other available methods" for the fair and efficient resolution of the case. This case was certified as a class action not under Rule 23(b)(3), but under subdivisions (b)(1) and (b)(2). Defendants have not challenged that certification on appeal.[2]

█ The form of notice to be given in (b)(2) and (b)(3) class actions is governed not by Rule 23(c)(2), see *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 n.14 (1974), but by Rule 23(d)(2):

---

[2] In its memorandum of decision certifying the class action, the trial court found that "questions of law and fact ... are common to all members of the plaintiff class." In their reply brief, defendants contend that this finding supports only a 23(b)(3) class certification: "Just as a rose by any other name

> In the conduct of actions to which [Rule 23] applies, the court may make appropriate orders ... requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action ....

See also Reporter's Notes to V.R.C.P. 23 ("[m]embers of classes under [Rule 23(b)(1) and (b)(2)] may receive notice in the court's discretion under Rule 23(d)(2)"). The trial court's order that notice be given class members by publication in a national trade journal was within its discretion and comports with the requirements of Rule 23(d)(2).

## V.

Defendants' final argument is that the trial court's order should be applied prospectively only. Although we addressed a similar argument in our decision in the companion case of *American Trucking 4*, we cannot apply that reasoning here, since each case involves its own jurisprudential history demanding a balancing of the equities which are necessarily unique to it. See *American Trucking 4*, 152 Vt. at 378, 566 A.2d at 1332 (departure from rule of retroactivity is discretionary, and must weigh "what is necessary, what is fair, and what is workable") (relying on *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973)); *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07 (1971) (court must weigh merits and demerits of prospectivity in each case).

In deciding whether a case should be applied prospectively only, we apply the standards enunciated in *Solomon v. Atlantis Development, Inc.*, 145 Vt. 70, 74, 483 A.2d 253, 256 (1984), keeping in mind that these standards are to be applied flexibly, and only as guidelines for the court's discretion. See *American Trucking 4*, 152 Vt. at 379, 566 A.2d at 1332.

---

is still a rose, a 23(b)(3) class action by any other name is still a 23(b)(3) class action ...."

The finding made by the trial court went not to Rule 23(b)(3), which requires findings of "predominance" and "superiority," but instead addressed the prerequisite imposed by Rule 23(a)(2), namely, that no class action whatsoever may be maintained unless there are questions of law or fact common to the class. This finding was thus necessary to the certification of either a (b)(1), (b)(2) or (b)(3) class.

Under *Solomon*, relief will be applied only prospectively where the case establishes a new rule of law (either by overruling clear past precedent or by deciding a matter of first impression in a manner "not clearly foreshadowed"), and where its retroactive application would be inequitable. 145 Vt. at 74, 483 A.2d at 256. Defendants contend that under this doctrine, the trial court should have applied the United States Supreme Court's decision in *American Trucking Associations v. Scheiner* prospectively only, as of September 30, 1987 (the date the trial court preliminarily enjoined defendants from assessing the decal tax). Were we to accept this position, plaintiffs would receive no monetary compensation from the escrow account, since no taxes were collected after September 30th.

Defendants first argue that *Scheiner* established a new principle of law. We disagree. This Court in *American Trucking 1*, issued in 1982, warned defendants in a case quite similar to the one before us that actual discrimination, as well as facial discrimination, could serve as a basis upon which a tax burdening interstate commerce would be declared unconstitutional. See 142 Vt. at 22, 451 A.2d at 45 (actual discrimination can be found by comparing costs per mile).

Defendants claim that because a cost-per-mile analysis was not used by the United States Supreme Court to invalidate flat taxes prior to *Scheiner*, they had a right to rely on the constitutionality of such taxes. They also characterize our statement in *American Trucking 1* as dicta, which in their view need not be considered. In essence, they argue that this Court's decisions on constitutional matters are not binding until ratified by the United States Supreme Court.

We do not dispute that that Court is, in the end, the final arbiter of constitutionality. But that does not deprive this Court of the ability to make constitutional rulings, nor should it render our legal analyses suspect—not, at least, until tested in that forum. In addition, to say that defendants were unaware that actual discrimination, as opposed to facial discrimination, would serve to invalidate a truck tax is to ignore even the United States Supreme Court's pronouncements on taxes impinging on the Commerce Clause. For example, in *Maryland v. Louisiana*, 451 U.S. 725 (1981), the Court held that

[a] state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme. "In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce."

*Id.* at 756 (quoting *Best & Co. v. Maxwell,* 311 U.S. 454, 455–56 (1940)). The Court noted that applying the "actuality of operation" test, an otherwise discriminatory tax might be demonstrated to be a proper compensatory tax. *Id.* at 758; see *American Trucking 4,* 152 Vt. at 373–74, 566 A.2d at 1330, for a discussion of compensatory taxes.

In our opinion, the United States Supreme Court's holding in *Scheiner* did not overrule clear past precedent, nor can defendants claim, in light of that Court's own constitutional analyses in cases prior to *Scheiner* and our reasoning in *American Trucking 1,* that *Scheiner* was not so foreshadowed as to bring it within the doctrine of prospectivity. See *Solomon v. Atlantis Development,* 145 Vt. at 74, 483 A.2d at 256.

Even were we to conclude that *Scheiner* established new law, we do not agree that defendants have demonstrated that the second guideline suggested in *Solomon* has been met: that the decision's retroactive application would be inequitable. *Id.* Their main contention is that while Vermont relied upon revenues from the decal tax to fund its Transportation Fund, plaintiffs suffered little or no measurable economic harm in paying the tax.

Courts have not hesitated to impose a decision which renders a tax unconstitutional prospectively only where the state has relied on the income from the tax. In *Salorio v. Glaser,* 93 N.J. 447, 461 A.2d 1100 (1983), for example, plaintiffs attacked the validity of New Jersey's Emergency Transportation Tax (ETT). The court declared the tax invalid, but, applying the doctrine of prospectivity, denied plaintiffs a refund of the monies paid under the ETT. A prime factor in its decision was the state's "justifiable reliance" on the income from the tax, demonstrated in part by the fact that expenditures of the tax income had already been made. "The expenditures cannot be undone and reimbursement would have a substantial effect on

the State's existing financial requirements. Public fiscal stability is at issue." *Id.* at 465, 461 A.2d at 1109–10.

What distinguishes *Salorio* and the other cases relied on by defendants is that, here, no taxes *qua* taxes were collected and no expenditures were made. In fact, the escrow order went into effect a mere three days after the offending provisions were signed into law, hardly enough time for the state to claim that it relied upon them. Cf. *id.* at 466, 461 A.2d at 1110 ("[n]or did the plaintiffs seek interim injunctive relief during the pendency of this action"); *Foss v. City of Rochester*, 65 N.Y.2d 247, 260, 480 N.E.2d 717, 724–25, 491 N.Y.S.2d 128, 136 (1985) (involved already-collected taxes); *Metropolitan Life Ins. Co. v. Commissioner of Dep't of Ins.*, 373 N.W.2d 399, 412 (N.D. 1985) (state relied on, and spent, the income from the challenged tax); *Bond v. Burrows*, 103 Wash. 2d 153, 164, 690 P.2d 1168, 1174 (1984) (state decisions giving cases prospective effect "primarily rely on the great financial and administrative hardship that would be entailed if retroactive effect were allowed"). Given the existence of the escrow order, we see no reliance by defendants sufficient to render our decision today inequitable.

Defendants also argue that retroactive application of *Scheiner* is inequitable because there was little measurable economic harm to plaintiffs, since any harm suffered by each trucker on account of the decal tax "was minute." We perceive no merit in this contention. This claim ignores the fact that the total harm approached $8 million. We see no merit to their belief that such harm is economically irrelevant because distributed among a large class of plaintiffs.

Likewise, we reject defendants' argument that plaintiffs suffered no harm, since they either did, or were able to, pass the costs of the tax through to their customers. Most of the cases relied on by defendants involved taxes originally collected by the claimants directly from third parties, see, e.g., *State ex rel. Szabo Food Services, Inc. v. Dickinson*, 286 So. 2d 529, 532 (Fla. 1973) (seller who collected sales tax by law directly from customer had no standing to demand refund), or where the fact that the tax had been "passed through" was undisputed. *Metropolitan Life*, 373 N.W.2d at 412.

■ This case involves a tax levied directly on plaintiffs, and there was no evidence that they actually passed their costs on to their customers. Although defendants claimed that plaintiffs admitted this practice in testimony before a legislative committee, we agree with the trial court that this "was not an admission that the cost of the truck decal tax had been passed on to consumers. Rather, it was a statement of industry policy not conclusive of what actually happened in this case." As in *American Trucking 4*, 152 Vt. at 381, 566 A.2d at 1334, we see no inequity arising out of defendants' unsubstantiated pass-on defense.

■ Because we conclude that the result in this case involved no new rule of law, and because we see no inequity in granting plaintiffs a refund of the escrowed tax money, we conclude that the United States Supreme Court's decision in *American Trucking Associations v. Scheiner* need not be applied prospectively only, so as to preclude plaintiffs' recovery of the escrowed funds.

*Affirmed.*